# Robert D. Adams v. John S. Adams.

81 637
181s 210
81 637
189 91

1. POSSESSION—*Presumptive Ownership.*—The possession of personal property is ordinarily *prima facie* evidence of ownership, but this presumption may be overcome by the circumstances surrounding such possession.

2. PROBATE MATTERS—*Jurisdiction of County Courts.*—In probate matters, County Courts have jurisdiction of an equitable character and may adopt the forms of proceedings in equity.

3. SAME—*Petitions for the Discovery of Assets.*—A proceeding under Sections 81 and 82 of the Administration Act, for the discovery of assets, is in the nature of a bill in chancery for discovery, and the proceedings should be governed by the principles and practice in equity.

**Petition**, under Sections 81 and 82 of the Administration Act. Trial in the Circuit Court of Lee County, on appeal from the Probate Court; the Hon. JAMES S. BAUME, Judge, presiding. Finding for petitioner; appeal by defendant. Heard in this court at the December term, 1898. Affirmed. Opinion filed April 11, 1899.

MORRISON & BETHEA and HENRY S. DIXON, attorneys for appellant, contended that the possession of the check and money transferred by it, and of the notes and mortgages, is sufficient evidence of title in appellant. Martin v. Martin, 174 Ill. 371; Ransom v. Jones, 1 Scammon, 291; Curtiss v. Martin, 20 Ill. 557; 2 Parsons on Notes and Bills, pp. 52, 53, 444; 2 Randolph on Commercial Paper, Sections 717,

776; Koehler v. Adler, 78 N. Y. 287; Poucher v. Scott, 98 N. Y. 422; Grey v. Grey, 47 N. Y. 552; Nay v. Curley (N. Y.), 21 N. E. Rep. 698; 19 Encyc. of Law, 53; 1 Daniel's Negotiable Instruments, Sections 810, 812; 2 Daniel's Negotiable Instruments, Section 1646; Comer v. Comer, 120 Ill. 426; Underhill on Evidence, Sec. 229; 1 Jones on Evidence, Secs. 43, 71.

The transaction being a transfer of money from a parent to a child, the presumption is in favor of the child. Under such circumstances it is necessary for the person attacking the transaction to show that it was fraudulent, or in some way void. White v. Ross, 160 Ill. 56; Francis v. Wilkinson, 147 Ill. 370; Oliphant v. Liversidge, 142 Ill. 160; Capek v. Kropik, 129 Ill. 509; Burt v. Quisenberry, 132 Ill. 399; Cowee v. Cornell, 75 N. Y. 91; Thornton on Gifts and Advancements, 215, 221, 222; 1 Bigelow on Frauds, 357; 8 Encyc. of Law, 134, 335; Yeakle v. McAtee (Pa.), 27 Atl. Rep. 277.

A. C. BARDWELL, attorney for appellee.

BARGE & BARGE, attorneys for the widow, and guardian of the infant child of Waldo Adams, deceased.

The presumption applied to such cases belongs to the class known in the books as " weak presumptions."

Manual possession alone is not sufficient to establish a gift. Proof of manual possession in the donee is always an element in his favor; and if he acquired that possession in connection with words of gift expressing an intent to give, it raises a very strong presumption of a gift, and is very often the turning point in the transaction. But manual possession in the donee is always subject to explanation; and its force in upholding the claim that the transaction amounted to a gift, is greatly weakened if the donor is dead and the donee has ready access to his property and effects. Possession in a stranger not inhabiting the same house, when words of gift are shown, is much stronger evidence of a gift than proof of possession when the donor and donee

maintained close personal relations and actual business contact in the every-day affairs of life. Thornton on Gifts and Advancements, 223.

In all transactions between persons occupying relations, whether legal, natural or conventional in their origin, in which confidence is naturally inspired, is presumed, or in fact reasonably exists, the burden of proof is thrown upon the person in whom confidence is reposed to show affirmatively that no deception is practiced, no undue influence used and that all was fair, open, voluntary and well understood. Mott v. Mott, 49 N. J. Eq. 192. See also 1 Story Eq. Jur., Secs. 246, 311; Malin v. Malin, 2 Johns. Ch. 238; Bigelow on Fraud, 265; Simpler v. Lord, 28 Ga. 52; Allore v. Jewell, 94 U. S. 506, p. 511; Harding v. Handy, 11 Wheat. 103; 8 Enc. of Law, p. 1310; Bispham's Equity, 329, 339; Sturgeon v. Burrall, 1 Ill. App. 537; Yoakum v. Yoakum, 77 Ill. 85; Martin v. Martin, 1 Heiskell (57 Tenn.), 654.

MR. JUSTICE HIGBEE delivered the opinion of the court.

At the June term, A. D. 1897, of the County Court of Lee County, appellee, as one of the heirs at law of Amanda M. B. Adams, deceased, filed his petition under sections 81 and 82 of the administration act, representing that he had reason to believe that appellant, also an heir at law of said deceased, had in his possession certain moneys, effects, securities and evidences of debt belonging to her at the time of her death, of the value of $10,000, and praying that appellant be ordered and decreed to transfer the same to the administrator of the estate of said deceased. Appellant filed his answer denying that he had in his possession such moneys, effects, securities or evidences of debt.

It appeared from the evidence in the case that the intestate, Amanda M. B. Adams, a widow, died May 29, 1897. She left surviving her as her heirs at law, three sons : Waldo, who died January 1, 1898, leaving a widow and infant child surviving; John S., the appellee, and Robert D., the appellant; also a legally adopted daughter, Maude Adams, who was at the time of Mrs. Adams' death, fourteen years of age.

Mrs. Adams at the time of her death was about seventy years of age. For about five years prior to January 1, 1895, one Jason C. Ayers had conducted her affairs, loaned her money and collected her interest. Some time prior to November 5, 1894, she had nearly her whole estate invested in two mortgages, one of $8,000 and the other about $1,600. In October, 1894, Mrs. Adams informed Ayers that she was tired of the irregularity of the payment of interest on the loan of $8,000 and desired to have the same collected. Mr. Ayers therefore proceeded to take steps to make the collection, and on November 5, 1894, the sum of $8,164.71, was collected by him. On the day the money was received by him he deposited $6,000 to her credit in the bank and four days later $2,000 more. On January 4, 1895, he collected the other of the two loans above mentioned, which amounted with interest to the sum of $1,758.12, which he held for the time subject to her order. Mrs. Adams told Ayers at their meeting in October, 1894, that as her health was poor, she would send her son, the appellant, to see about the collections from time to time. Soon after the deposit of the $8,000, appellant made inquiry as to where a loan for a large amount could be placed. On December 24, 1894, Mrs. Adams gave appellant a check for the $8,000 on the bank, and on January 7th following, he loaned the same to one Rosenthal, to whom he had been referred by one of the parties of whom he made inquiry, taking the note and mortgage in his own name, and at the same time drawing the money from the bank on said check from his mother. On January 15, 1895, Mr. Ayers gave appellant his check for $1,600, and on January 29th following his check for $62.25 of the funds held by him to the credit of Mrs. Adams. On January 17th appellant presented the check of Mr. Ayers for $1,600 to the bank and took a certificate of deposit payable to his own order for $1,500. After the death of Mrs. Adams letters of administration on her estate were taken out and the administrator filed an inventory, showing that all the property she owned at the time of her death was a lot in the city of Dixon, Illinois, valued at $500

and household furniture of the value of $150. The object of the petition here was to compel appellant to turn over the money, notes and mortgages, received by him from the fund collected by Mr. Ayers, to the estate of his mother. Upon the trial appellant was not examined under oath, concerning the property claimed by him, as he might have been under the statute, nor did he offer any evidence on behalf of himself, all the evidence in the case having been produced on behalf of appellee.

It is agreed by counsel on both sides that the only question presented to this court, apart from the one involving the jurisdiction of the County Court in this case, is, whether or not the proof was sufficient in law to sustain the order and judgment entered by the Circuit Court. The position taken by appellant was, that the possession by him of the money, notes and mortgage mentioned in the evidence was sufficient evidence of title in him, and that it devolved upon the appellee to prove that such possession was not lawful.

That the possession of personal property is ordinarily *prima facie* evidence of ownership can not be controverted, but this presumption may be overcome by the circumstances surrounding such possession. In the case of Martin v. Martin, 174 Ill. 371, which, like the case before us, was based upon a petition presented to the County Court under sections 81 and 82 of the administration act, for the discovery of assets of the estate, it was held that " The right to the possession and full beneficial interest in an unindorsed negotiable paper may pass by manual delivery of the paper, and in the absence of testimony tending to disprove that the notes were delivered, the presumption will obtain that one in the possession of such paper came rightfully into possession." Counsel for appellant assert repeatedly in their briefs that said case is absolutely in point, and controls the case at bar. The facts in that case, however, as set forth more fully in the same case, in 170 Ill. 18, were very different from those shown by the record in this case. The person who was there charged with having in her hands the assets of the estate, was a niece of the decedent, and he

appears to have left no widow, children or descendants of children, surviving. She had lived with and worked for him over forty years, and for some time prior to his death had full charge of his home. He regarded her with great affection and frequently expressed his intention to make ample provision for her. Some three years prior to his death he went with her to a bank, where she rented a box in the safety deposit vault, and paid the rent for it. He then put into the box certain securities for her, and added to them from time to time, on each occasion making a memorandum in his diary of the securities deposited, and indicating that they were for her. He placed a letter in the box, stating that everything therein belonged to his niece and giving the names of persons to whom he had stated that fact. About a month before his death, he told a witness who became one of his executors, that he had put personal property in his niece's box, which was her property; that it was no part of his personal estate, and he wanted his executors to keep their hands off. All the securities she had in her possession were either transferable by delivery or assigned to her. Under such circumstances the presumption would undoubtedly obtain that the niece came rightfully into the possession of the property.

In the case under consideration, appellant, who, although his age does not appear from the evidence, had evidently reached his majority, was at the time the money and notes in question came into his possession, living with his mother, who was ill, and some sixty-eight years of age. It does not appear that he assisted in her support or rendered her any service except that which was rendered in connection with the fund in controversy. She had at the time of such transaction two sons, besides appellant. She also had residing with her at the time an adopted daughter who was then only twelve years of age. The property which came to the possession of appellant was substantially all that his mother had. By the transfer of the sums of money in question to appellant she was, in her old age, practically deprived of all means of support for herself and her adopted daughter. How or for

what purpose the money was turned over to appellant is not shown by the evidence. It simply appears that almost as rapidly as the same was collected by Mr. Ayers, who had charge of it for Mrs. Adams, appellant took possession of it and loaned or deposited it in his own name. These circumstances distinguish the case very materially from the case of Martin v. Martin, *supra*, and are in our opinion amply sufficient to overcome the presumption of legal ownership implied by the mere possession of the property. It having been shown by the evidence that the mother of appellee was the owner of the funds in question at the time the same were collected by her agent, Mr. Ayers, that shortly afterward the same came into the hands of appellant and were invested or deposited in his name, and it appearing that the circumstances surrounding his possession of such funds were such as to overcome the presumption of ownership created by such possession alone, it follows that the burden of proof was then cast upon appellant to show his legal right to the property. This he did not attempt to do. He objected to the admission of testimony tending to show that he claimed the fund as a gift from his mother, and in his brief his counsel, while citing authorities sustaining gifts from parents to children, say, " We do not cite these authorities as to gifts for the purpose of claiming that the evidence shows there was a gift here," and again " They (counsel for appellee) are entirely wrong when they assume that we are trying this case on the proposition that this was a gift from the mother to the son."

Appellant, by his answer, negatives the idea of a loan, and his counsel argue and cite authorities to show that the transaction could not constitute a loan. There is an intimation in the brief of appellant, that the presumption of law would be that the checks were delivered to appellant in payment of a debt. That position, however, can not be seriously contended for, under the circumstances of this case. As a matter of fact he does not insist that the transaction constituted a gift, a loan, or the payment of a debt, but contents himself with relying upon the proposition that " every

presumption is in favor of appellant here, and his possession of the money, notes and mortgages in question, is certainly *prima facie* proof that he is the owner of them."

It has been held by our Supreme Court, that in probate matters, County Courts have jurisdiction of an equitable character and may adopt the forms of equitable proceedings; that a proceeding such as this, is in the nature of a bill in chancery for discovery and equitable relief; and that the proceedings should be governed by equitable principles and practice. Such being the rule, the position taken by appellant would not appeal strongly to the conscience of the court sitting as a chancellor, and even slighter circumstances than those shown by the record here would be sufficient to overcome the presumption in favor of appellant, raised by his possession of the funds.

It is further urged by appellant that "unless there was evidence sufficient to make a trust relation between appellant and his mother and to make him the trustee for her in the transaction, the court in this proceeding had and has no jurisdiction." In support of that proposition, the cases of Martin v. Martin, *supra*, and Dinsmore v. Bressler, 164 Ill. 211, are cited. It is sufficient for us to say here, that the record shows appellant was trusted by his mother to look after the collections in the hands of her agent, Ayers, for her, from time to time, and that he was intrusted with checks for her money by both Ayers and his mother. In our opinion it is clear from the evidence that a relation of trust and confidence existed in regard to this fund between appellant and his mother. The order entered by the Circuit Court was in accordance with the law and the evidence in the case and the judgment therein contained will be affirmed.