## Hannah Mulvihill, Administratrix, etc., v. Matthew White.

1. ADMINISTRATION OF ESTATES—*Who Are Trustees and Not Debtors of an Estate.*—A person received from the son of an aged couple certain property for the purpose of converting it into money and holding it for their use until demanded, etc.; in the absence of an agreement to use it as his own, such person must be held, while he has the money, not technically as a debtor but as a trustee of the persons for whose use he received it, and must account as such trustee to the personal representatives of their estate.

2. PRINCIPAL AND AGENT—*Who is a Trustee and Not an Agent.*—Money of the principal in the hands of the agent is still the money of the principal, and the agent has no right to use it or to pay it out for his own private purposes. While he has the money he is not technically the debtor of his principal but simply his trustee.

Proceedings in Probate to Discover Assets.—Error to the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded with directions. Opinion filed February 1, 1900. Rehearing denied April 6, 1900.

H. M. KELLY and SAMUEL RICHOLSON, attorneys for plaintiff in error.

Lincoln & Stead and Trainor & Browne, attorneys for defendant in error.

Mr. Justice Dibell delivered the opinion of the court.

This is a proceeding instituted on November 10, 1897, by Hannah Mulvihill, administratrix of the estate of John Mulvihill, deceased, in the Probate Court of La Salle County, against Matthew White, under sections 81 and 82 of the administration act. Upon a hearing the Probate Court dismissed the petition. The administratrix appealed to the Circuit Court, where, upon a hearing of proofs offered by each party, a like order was entered. The administratrix sued out this writ of error. The order is defended upon the ground that the relation between White and John Mulvihill in his lifetime, was merely that of debtor and creditor, and therefore the case is not one for which said sections were designed to afford a remedy.

The money sought to be reached came into the hands of White in this way. John Mulvihill and his wife were very old. John had some personal property and real estate. He was unable to attend to his business by reason of his age. He had two sons, William, who lived at home, and Michael, who lived in Iowa. William was dissipated and was squandering his father's property. The parents sent for Michael, and he came home in 1892, and spent a month. After he found out the condition of things, and was under the necessity of returning to his home in Iowa, he went to White, a friend of the family, and an arrangement was discussed and partially agreed upon between them. Then Michael brought White to his parents. An arrangement was then completed between the parties. The proof of this arrangement is as follows. Michael testified concerning the preliminary arrangement: "Mr. White and I came to the conclusion that we better do something, and we came to the conclusion to sell this stock, and Mr. White to take the proceeds and hold it for the old folks and collect it in. I told him I could not be here to attend to it; I lived too far away." "He was willing to do it." And of the final

arrangement between White and his parents, Michael testified: "That was the substance of the deal, that is, selling out, and have Mr. White hold this money and collect it in and give it to them." "He was to hold it for them until they demanded the money at any time, because at that time they were calculating to buy some property in Seneca or some other little town; that they might need it to buy their property; and so I could not tell them what time, but any time they might need it to call on him." William testified he heard only what White said when he went away, which was, "You can rest your minds easy, old people, that I will sell this stuff and turn it into money, and take good care of it for you." There was no proof to contradict this testimony.

Thereafter White got out sale bills in his own name, sold the personal property at public vendue, received the proceeds of small sales in cash, took notes in nine months and running to himself for the rest, and collected the notes. Michael sold the land, and two notes therefor were turned over to White, and collected by him. White paid various sums to and for John Mulvihill in his lifetime, and paid his administratrix a sum sufficient to defray the funeral expenses. He rendered an informal account showing his receipts and disbursements, and showing a considerable sum still in his hands.

John Mulvihill did not loan this property or its proceeds to White. There is nothing in the proofs indicating it was any part of the arrangement that White should use the money for his own purposes, and become merely the debtor of John Mulvihill. There was no suggestion that he was to pay interest on the funds after he had collected them in. If White as fast as he collected in the money had put it and kept it in a separate receptacle by itself in his safe, and when called upon for money had opened the package and given John Mulvihill the amount asked for, and retained the rest to await further calls, he would have fulfilled every requirement of the arrangement shown by the proof. Whether he did this the proof does not disclose, but he under-

took no further duty.   If, however, there was any implied duty to loan out some portion of this money that it might earn interest for his principal, still he would be responsible in this proceeding, under Blair v. Sennott, 134 Ill. 78.   We are of opinion the proofs show White the agent and trustee of John Mulvihill, and that he received and held these moneys in that capacity.   White was to sell the property for John Mulvihill, collect the proceeds for him, take care of them for him, and pay the money to him as he called for it.   Defendant relies upon cases decided under former section 90 of the statute of wills.   Sections 81 and 82 of the administration act are a substitute for said section 90, but they are much broader and reach cases not within the purview of the former enactment.   We are of opinion that under Blair v. Sennott, *supra*, Dinsmoor v. Bressler, 164 Ill. 211, and Adams v. Adams, 81 Ill. App. 637, and 181 Ill. 210, this case is within the summary jurisdiction conferred upon the Probate Court by said sections 81 and 82.   In Blair v. Sennott, *supra*, the court said :

"Money of the principal in the hands of the agent is still the money of the principal, and the agent has no right to use it or pay it out for his own private purposes.   While he has the money, he is not technically the creditor (debtor) of his principal, but simply his trustee."

The petition alleges the money is " due " from White to the estate, and asks for interest, but it fully sets forth that White received the money as agent of John Mulvihill, and we do not think the petition defective, though it may have asked too much.   White unnecessarily filed an answer. (Martin v. Martin, 170 Ill. 18, 24.)   He supported it by his affidavit.   He therein admitted making the sale and receiving the moneys, and gave figures only slightly variant from those shown by petitioner's proofs, and so far it may be taken as an admission against him.   He therein further set up that he held notes against John Mulvihill, secured by a chattel mortgage upon the personal property in question, and that he made the sale under said mortgage and applied the proceeds upon said debt, and that the payments he made were not because he owed anything but because the

parties were needy. Michael testified that White told him about this chattel mortgage when they were on their way to make this arrangement, but told him it was worth nothing and that John Mulvihill did not owe him anything. White offered proof at the hearing in the Circuit Court, but did not testify himself, and did not contradict Michael either as to the fact and terms of the arrangement, nor as to his statement concerning the chattel mortgage, and he did not introduce the chattel mortgage and notes in evidence.

From the evidence we find that White received at the sale $1,216.65, and received on one real estate note $200, and on another $122.76, making a total received by White for John Mulvihill of $1,539.41; that White paid $20 for expenses of the sale, paid to and for John Mulvihill $404.67, and paid the administratrix $161.50, making the total disbursements $586.17, and leaving in the hands of White $953.24, for which, without interest, we are of opinion petitioner was entitled to an order.

The order of the court below is reversed and the cause remanded, with directions to enter a proper order for the payment of $953.24 by White as the administratrix.

Reversed and remanded with directions.