JOHN LOLORDO, Administrator of the Estate of VINCENZO LOLORDO, v. VERNE R. C. LACY, Appellant.—88 S. W. (2d) 353.

Division One, November 12, 1935.*

*NOTE: Opinion filed at May Term, 1935, July 9, 1935; motion for rehearing overruled July 30, 1935; motion to transfer to Court en Banc filed; motion overruled at September Term, November 12, 1935.

*Verne R. C. Lacy, pro se.*

*James J. Seeley* and *Claudio Delitala* for respondent.

HYDE, C.—This is a statutory proceeding to discover assets commenced in the Probate Court of the City of St. Louis which plaintiff as administrator of the estate of Vincenzo Lolordo·alleged that defendant wrongfully withheld. Said assets were alleged to be ''$18,-000 cash proceeds from the sale of 3103 and 3220 Washington Avenue, City of St. Louis, Missouri.'' Interrogatories concerning these transactions were propounded and answered by defendant who stated that he sold the properties mentioned at foreclosure sales as trustee under deeds of trust thereon and that he had accounted to the administrator for the proceeds thereof. Upon the defendant's application, the matter was certified by the probate court to the circuit court. The case was there tried·before a jury which returned a verdict for plaintiff for $10,978. Defendant has appealed from the judgment entered thereon.

Defendant makes three assignments of error as follows: (1) The court erred in overruling defendant's demurrer to the evidence at the close of the·case; (2) that the court erred in permitting plaintiff to impeach the testimony given by defendant when called as a witness by plaintiff; (3) that the court erred in not referring the case to a referee and in not· passing upon the question of reference. These assignments will be considered in inverse order.

Assignment No. 3 cannot be considered because not properly preserved for review. There is no ground stated in defendant's motion for new trial concerning failure to refer the case to a referee, but only complaints that the court erred in refusing to transfer the case to the equity division and that the court did not dispose of defendant's application for such transfer. The record·does not show that such an application for transfer was overruled or otherwise acted upon. The record does show that on the same day that the motion was filed the case was assigned to Division Nine; that the trial commenced on that day; and that before any witnesses were heard defendant's counsel called the attention of the trial court to the motion to transfer. The record further shows that defendant's counsel explained the nature of the case to the court and that the

court said "Well, there is nothing complicated about that." Plaintiff's counsel then stated that "the statute provides these matters be tried before a jury" and asked the court to hear it before a jury. The court said: "All right, file your motion." Defendant's attorney said: "In the course of the trial, Your Honor can pass on it." The court replied: "Yes, as the matters come up from time to time, I'll pass on them." There is no further reference in the bill of exceptions to this motion. A jury was selected and plaintiff's counsel proceeded to make his opening statement and call his witnesses. If the remark of the court can be considered as a ruling, no exception was saved to it, and it was not called to the court's attention by the motion for new trial. Objection to a reference or to a failure to refer is a matter to be raised by exception. Therefore, there is nothing upon which we can act. [Secs. 1008 and 1061, R. S. 1929; Bank of Darlington v. Atwood, 225 Mo. App. 974, 36 S. W. (2d) 429; Hansen v. Duvall, 333 Mo. 59, 62 S. W. (2d) 732; State ex rel. Kimbrell v. People's Ice, Storage & Fuel Co., 246 Mo. 168, 151 S. W. 101; see, also, Wahl v. Cunningham, 332 Mo. 21, 56 S. W. (2d) 1052, and cases cited.]

█ Defendant's second assignment must be overruled. The rule as to impeaching a party's own witnesses does not apply to such testimony of his adversary as was given in this case under the circumstances here. Our statute, Section 1725, Revised Statutes 1929, provides that either party has the right to compel the opposite party to testify and may examine him under the rules of cross-examination. The very purpose of cross-examination is to test the correctness of a witness's story and is in the nature of an attack upon its truth or accuracy. The privilege of thus examining an adversary is granted, because, as said by this court en banc, "There is nothing in the law counter to the Biblical admonition 'By thy words thou shalt be condemned.' Matt. XII, 37." [Smith v. Ohio Millers' Mutual Fire Ins. Co., 320 Mo. 146, 6 S. W. (2d) 920, l. c. 928.] Neither is there anything to prevent the plaintiff, after so examining the defendant, from producing whatever evidence he can to show that "what he says is not strictly in accord with the truth" and to leave it to the court or jury "to place a proper estimate on it." In any case where a party desires to prove an essential part of his case by his opponent, he is permitted to do so, and he is only bound by the part of his adversary's testimony which he himself offers and vouches for as the truth. A party cannot be permitted (except where there is an honest mistake) to later deny what he, himself, claims to be the truth and that is why he is bound by the evidence of the witnesses he produces to prove the allegations of his pleadings. He is not even bound by their testimony if, to his surprise, they turn out to be unfriendly or testify to the contrary of what he has in good faith been led to expect. [Smith v. Ohio Millers' Mutual Fire Ins. Co., supra, and cases therein cited.] Plaintiff here at all times claimed that

1102

defendant had not paid to the Lolordo estate the proceeds of the foreclosure sales. He put defendant on the stand to find out how much of this he would admit was unpaid, not to prove that he had paid it. After examining defendant, plaintiff then was entitled to show by any other witnesses available that defendant never had paid any amounts which he would not admit were unpaid.

■ There remains the question of the demurrer to the evidence. Plaintiff John (or Giovanni) Lolordo was, in 1925, appointed administrator, by the Probate Court of the City of St. Louis, of the estate of his deceased brother Vincenzo Lolordo. Defendant was the attorney for plaintiff as administrator and had also acted as Vincenzo's attorney during his lifetime. The assets of the estate included properties at 3103 and 3220 Washington Avenue. A petition was filed to sell this real estate under an order of the probate court but, because of Vincenzo's widow being in Italy, so that her dower right could not be readily obtained, this was abandoned and the properties were sold under foreclosure of first deeds of trust thereon. While these properties were sold at a foreclosure sale, the amount for which they were to be sold was agreed upon as though they were to be sold at private sale and this price was in excess of their appraised values. Defendant, on applications to the circuit court, was appointed successor trustee of both deeds of trust. The property at 3220 Washington was sold to Nellie D. Scott at the foreclosure sale October 27, 1925. The property at 3103 Washington was sold at foreclosure sale on January 14, 1926, to Morris Lipschitz. The first mortgages and delinquent taxes were each time paid out of the agreed sale price, the balance was turned over to defendant, and deposited by him in his own name (or in the name of himself and his stenographer who at least had authority to draw checks on it) in an account in which it was commingled with defendant's own personal funds. Just how much defendant received after the mortgages and taxes were paid and how much thereof he had accounted for was the issue tried in this case.

There was no dispute about the fact that the agreed sale price for the property at 3220 Washington was $20,500; and that the trustee's deed stated that it was sold for $19,270. The difference was the taxes due estimated at $1230. Actually it took $1237.87 to pay these taxes and there was another tax item of $14.83. The amount which defendant received as trustee from the sale was $14,770, which figure was reached, as follows:

| | |
|---|---|
| Total sale price | $20,500.00 |
| Retained to pay taxes | 1,230.00 |
| Consideration stated in trustee's deed | $19,270.00 |
| Check to holder of first trust deed | 4,500.00 |
| Amount deposited in defendant's bank account | $14,770.00 |

Defendant's own testimony was that he paid the excess of taxes and that the amount paid for the first mortgage and accrued interest was $4522. There is also evidence that $13.24 was paid as an insurance adjustment; that $20.50 was paid for revenue stamps on the trustee's deed (plaintiff claims the purchaser paid these items); that $4 was paid for court costs in obtaining his appointment as trustee; that $74.42 was paid for notice of foreclosure sale; and that $617.50 was paid as a real estate broker's commission (these last three plaintiff does not dispute) for obtaining the buyer at the sale. In addition, defendant was entitled to the statutory trustee's fee of $131.35 (Sec. 3092, R. S. 1929), although nothing was said about this at the trial. These items total $905.71, so that if defendant be given credit for all of them, there remained in his hands $13,864.29 from this sale which belonged to the Lolordo estate.

There is much more dispute about the agreed sale price for the property at 3103 Washington and the disbursements therefrom. The trustee's deed stated that it was sold for $8100. Defendant testified that the taxes were paid out of this amount. Plaintiff had the testimony of the purchaser that he paid $8100, and all taxes, which he said made the total about $10,000. The real estate man who arranged the sale said the total sale price was $9800, and that this included all taxes. The jury had the right to find that it was at least that much and we must consider on ruling the demurrer that they did so find. Starting with this figure the evidence shows payments made from it, as follows:

| | |
|---|---:|
| Total sale price | $9,800.00 |
| Real estate broker's commission | 300.00 |
| | $9,500.00 |
| Retained to pay taxes (actually $1403.23) | 1,400.00 |
| | $8,100.00 |
| Consideration stated in trustee's deed | |
| Paid to holder of first trust deed | 3,892.40 |
| | $4,207.60 |
| Paid to holder of second trust deed | 600.00 |
| | $3,607.60 |

There is evidence to show that $8.50 was paid for revenue stamps; that $4 was paid for court costs in obtaining appointment as trustee; that $71.06 was paid for notice of foreclosure sale; and defendant was entitled under Section 3092, Revised Statutes 1929, to a trustee's fee of $75.50. These items total $159.06, so that if defendant be given credit for all of them, there remained in his hands $3,448.54 from this sale which belonged to the Lolordo estate. Defendant claimed credit for another real estate commission of $215 but his authority

to pay this was disputed and the jury had the right to reject it. This was also true of the attorney's fee of $500, which defendant claimed he paid to another lawyer for acting as attorney for him as trustee. In the absence of a showing that this was necessary and was authorized by the trust deed, he had no right to do so. [Condict v. Flower, 47 Mo. App. 514; Tracy v. Gravois Ry., 13 Mo. App. 295, affirmed 84 Mo. 210.] There was also evidence that plaintiff as administrator gave defendant $900 for expenses in these matters and that defendant retained $235, giving him back $665. This was sufficient to pay the trustee's fees to which defendant was entitled and some of the other smaller items for which he claims credit.

There was considerable controversy about the total amount of taxes on this property and who paid them, which the evidence does not make entirely clear. Lipschitz, the purchaser, testified:

"What I can get off the books, it was $8,100.00, if I am not mistaken and that was the purchase price, and then we had to pay all taxes, back taxes, street taxes, which went up to nearly $10,000.00. . . . The way I recollect it, I bought it for $8,100.00, and supposed to pay all these specials that accumulated on it in addition to the $8,100.00. I paid the trustee at auction $8,100.00. . . . I know I paid all taxes and $8,100.00. That is what we paid for it but I am not sure whether I paid it direct to Mr. Shelp. . . . It is clear in my mind that I put up $9,800.00 for that property; that included the commission. . . . (Referring to memorandum.) The taxes is marked $1,403.23, and that is with the street bill, and $8,100 principal; and $300 commission."

In this he was corroborated by the real estate broker Mr. Shelp, who testified from memoranda, made at the time, as follows:

"The memorandum I have on the back, is that there was $1,400.00 taxes and street bills, and $8,100.00 purchase price, and $300.00 commission he gave me, making a total of $9,800.00. This totals $9,803.22, and that is what he deducted, $3.22. I was to get $300.00, and he gave me $296.00. I get a little less than he agreed to give. . . . It is a sort of memorandum of the approximate debts that were against this property that was to be foreclosed, that we had looked up at the City Hall and other places, tax bills and street bills. The total we have is $5,370.99. That includes interest in the first deed of trust on the property, and street bill. The selling price was $9,800.00. That memorandum shows the amount to the deed of trust as $3,700.00."

It does not seem to be possible to make the various figures as to taxes, in these memoranda or in the evidence, come out to one certain amount. In the memorandum showing the total sale price of $9800 the taxes and tax bills were $1403.22. In the memorandum showing total indebtedness against the property of $5370.99, it would appear from deducting the amount of the first mortgage and interest

therefrom ($3892.40), that the taxes and tax bills were $1478.59. The testimony of Lipschitz is that he paid $1660.22 ($1170.97 and $590.25), which would show his $10,000 total. Defendant claims that they amounted to $1744.69; that there was another old one of $1478.88; and that he paid them all out of the $8100. Whatever they were, the dispute is: Who paid them? and, Were they paid in addition to the $8100 consideration stated in the trustee's deed? We hold that this made a question for the jury to settle. It is interesting to note that the items for which defendant claimed credit would take almost every cent of the sale price if it was only $8100. Without including any attorney's fee or trustee's fee they amount to $8014.53.

While defendant claimed an allowance for the payment of the old special tax bill on this property of $1478.88, this tax bill shows on the front thereof an assignment to the West St. Louis Trust Company from the street contractor to whom it was issued, and also the following statement: "St. Louis, Feb. 9, 1922. Received payment in full of the above amount. West St. Louis Trust Co. Earle Meeks, Sec." On the back is also this statement: "Bill entered satisfied in Vol. 62, page 163. St. Louis, Feb. 27, 1922. Louis Nolte, Comptroller." Since Vincenzo Lolordo did not die until 1925, the jury had the right to believe, as plaintiff claimed, that he paid this tax bill during his lifetime.

According to the computation above made, which gives defendant the benefit of some items in dispute, he held $13,864.29 from the first sale and $3448.54 from the second which belonged to the Lolordo estate, a total of $17,312.83. Whether he had this amount, or only about $14,000 as he claims, it was his duty to immediately turn it over to the plaintiff as administrator of the estate to which it belonged. Defendant seems to take the view that this controversy is a personal one between himself and John Lolordo; and that, even if he has not shown that he has expended all of the money for the benefit of the estate, his demurrer to the evidence should have been sustained if he showed that an amount equal to the rest of it was expended for the benefit of John Lolordo personally. This overlooks the true nature of this proceeding. Plaintiff's right to a judgment herein is not based upon what he is personally entitled to as his own, but upon what belongs to the estate of Vincenzo Lolordo, for which he is acting in a representative capacity as administrator. Defendant's own testimony shows that the court should have overruled the demurrer to the evidence, because he admitted that he received the proceeds of these two properties and did not turn these proceeds over to the administrator but put them in his own bank account with his own personal funds and that they were not all used for the benefit of the estate. In this situation, he was not entitled to have the court rule a demurrer to the evidence in his favor because, if there was evidence reasonably tending to show any amount of these pro-

ceeds had not been so paid or accounted for, it was the duty of the court to submit the case to the jury to determine what that amount was. What he paid for the administrator personally and not for the estate was at his own risk and must be considered as paid out of his own personal funds and not out of these sale proceeds, which he held as trust funds, because it is a well-established rule that when a trustee has received and commingled trust funds with his own funds, it is presumed, in the absence of a contrary showing, that the trust funds are still there, and it will be considered that what was paid out of the commingled funds for other than trust purposes was paid out of the trustee's personal funds and not out of the trust money, and that all the rest remains as trust funds. [State ex rel. Talbott v. Shain, 334 Mo. 617, 66 S. W. (2d) 826; Orr v. St. Louis Union Trust Co., 291 Mo. 383, 236 S. W. 642; Horigan Realty Co. v. First National Bank, 221 Mo. App. 329, 273 S. W. 772; Bishop v. Mahoney (Minn.), 73 N. W. 6, L. R. A. 1916c, 22 note; Knatchball v. Hallett, L. R. 13 Ch. Div. 696.] Taking the above figure of $17,312.83, which the jury could have found under the evidence was the net proceeds of the sales even after allowing defendant credit for some disputed items, and allowing defendant credit for the probate claims and costs thereafter paid which plaintiff admits were proper (as shown in the statement hereinafter set out) we find that they amount to $5345.69; and that this would still leave defendant to account for $11,967.14. This is more than the amount of the verdict.

Defendant makes no assignment of error that the evidence was insufficient to show that there was as much due from him as the amount of the jury's verdict, but seems to erroneously assume that this is the question on his assignment that the court erred in overruling his demurrer to the evidence. If he had properly raised such a question it would have to be decided against him, as the computation we have made demonstrates.

The statements in defendant's own brief would force us to the same conclusion. It is there admitted that no testimony but his own supports the following items:

| | |
|---|---:|
| Probate Court work (attorney's fee) | $ 600.00 |
| Special tax bill, 3220 Washington | 1,478.88 |
| Judgment against V. Lolordo—3220 | 781.00 |
| Judgment against V. Lolordo—3220 | 700.00 |
| Father Spigardi—note of V. Lolordo | 700.00 |
| Father Spigardi—Mass | 80.00 |
| Domenic Dimaggio—note of V. Lolordo | 600.00 |
| Total | $4,963.88 |

The jury, of course, did not have to accept his testimony about any of them and it cannot be a matter of great surprise that they did not accept it in view of defendant's testimony that he "had no canceled

checks for any of these amounts;'' that he ''didn't personally keep
a book or record;'' and that most of his testimony about them de-
pended upon his own recollection which was not always definite
and certain. In addition to these amounts defendant admits that
there is $2,810.11 more that he can only obtain credit for up-
on the theory that the sale price of the property at 3103 Wash-
ington was $8100; that he paid all of the taxes out of that
amount; and that he is entitled to credits for personal obligations
of the administrator. Adding these two amounts together ($4963.88
plus $2810.11) there was an amount in dispute of $7773.99. Disre-
garding all other disputed items except defendant's own $3900 claim
against the estate, there is more than the amount of verdict of the
jury, which they reasonably could have found that defendant was
improperly withholding from the estate. While it seems to be ad-
mitted that defendant had filed a claim for $3900, and that it had
been allowed against the estate, it was not shown either what classi-
fication had been made of it in the probate court, what the total
assets of the estate were, what the total demands allowed against
the estate were, whether this claim was in a class which would be
entitled to any payment at all, or if so how much. [See Sec. 182,
R. S. 1929.] It does appear that a claim for $2285 had been allowed
in favor of the widow of Vincenzo Lolordo which would be entitled
to preference over plaintiff's claim. [See Secs. 106-110, R. S. 1929.]
Certainly the mere fact that defendant had an allowed claim for
$3900 was not enough to authorize him to withhold that amount of
the estate's funds from the administrator. If defendant's $3900
claim is valid and properly allowed and there are sufficient assets
to pay the claims in the class in which it has been classified, he may
still be paid the amount of it or whatever proportion thereof is paid
on claims of its class whenever the probate court makes an order for
a disbursement, which is applicable to claims of its class. We can-
not determine that question in this court upon this record.

We have arranged all the figures appearing in the evidence, to
make a complete statement of the claims of the parties, to-wit:

| Items for which credit is claimed by defendant | Amounts defendant claims he paid | Amounts admitted as proper credits by plaintiff | Amounts in dispute |
|---|---|---|---|
| Foreclosure sale—<br>3220 Washington | | | |
| First trust deed and interest | $ 4522.00 | $ 4500.00 | $ 22.00 |
| Court costs—<br>appointment | 4.00 | 4.00 | |
| Foreclosure notice | 74.42 | 74.42 | |
| Revenue stamps | 20.50 | | 20.50 |
| General taxes | 1237.87 | 1230.00 | 7.87 |

| | | | |
|---|---|---|---|
| Sprinkling taxes | 14.83 | | 14.83 |
| Broker's commission for sale | 617.50 | 617.50 | |
| Insurance adjustment | 13.24 | 13.24 | |
| First trust deed and interest | 3892.40 | 3892.40 | |
| Court costs— appointment | 4.00 | 4.00 | |
| Foreclosure notice | 71.06 | 71.06 | |
| Revenue stamps | 8.50 | | 8.50 |
| Special tax bill | 1478.88 | | 1478.88 |
| Other taxes | 1744.69 | 1400.00 | 344.69 |
| Broker's commission; Lauenstein | 215.00 | | 215.00 |
| Attorney's fee as trustee's attorney both sales | 500.00 | | 500.00 |
| Trustee's fee for both sales | 212.00 | | 212.00 |
| Second trust deed covering both properties | 600.00 | 600.00 | |
| Claims and costs— Lolordo Estate | | | |
| Probate Court costs | 89.60 | 89.60 | |
| Probate Court notices abandoned sales | 105.20 | 105.20 | |
| Other Probate Court notices | 24.60 | 24.60 | |
| J. C. Bensiek funeral expenses | 685.30 | 685.30 | |
| J. C. Bensiek Cemetery lot | 143.00 | 143.00 | |
| Moceri Monument Co. —monument | 625.00 | 625.00 | |
| Dr. John M. Dean | 249.00 | 249.00 | |
| Ely-Walker Dry Goods Co. | 1123.50 | 1123.50 | |
| Mercantile Trust Co. | 2300.49 | 2300.49 | |
| Funeral Mass | 80.00 | | 80.00 |
| Attorney's fee for Probate Court work | 600.00 | | 600.00 |
| Judgment against V. Lolordo | 781.00 | | 781.00 |
| Judgment against V. Lolordo | 724.00 | | 724.00 |

| | | | |
|---|---|---|---|
| Note of Father Spigardi signed by Giovanni Lolordo (the administrator) | 700.00 | | 700.00 |
| Note of V. Lolordo to Domenic Dimaggio | 600.00 | | 600.00 |
| Defendant's claim against the estate | 3900.00 | | 3900.00 |
| Defendant's claim against Giovanni Lolordo | 3900.90 | | 3900.00 |
| | $31,862.48 | $17,752.31 | $14,110.17 |
| Disputed claims | | 14,110.17 | |
| Totals | $31,862.48 | $31,862.48 | |

The conclusions to be drawn from these figures are:

First, if defendant had only to account for $28,600 and all of his claims were established he would have paid out all of the sale money and $3262.48 besides.

Second, if defendant is charged to account for $30,000, by reason of taking $9500 ($9800—$300 commission) as the sale price of 3103 Washington, and if he is only credited with the amounts admitted by plaintiff to be proper ($17,752.31), then the difference between this amount and $30,000 is $12,247.69.

Third, the jury, if it took the latter amount, allowed defendant credit for over $1200 of the items in dispute.

Fourth, there was substantial evidence to warrant a submission of the case to the jury.

The judgment is affirmed. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.

ON MOTION TO TRANSFER TO COURT EN BANC.

HYDE, C.—Defendant asks that this case be transferred to the Court en Banc on the ground that the opinion sanctions imprisonment for debt in violation of Section 16 of Article II of the Constitution. Defendant says that this is the effect of that part of the opinion, ruling on the demurrer to the evidence, which holds that if there was evidence tending to show that any of the sale proceeds received by defendant had not been paid to the administrator or for the benefit of the estate, then it was the duty of the court to overrule the demurrer and submit the case to the jury to determine what that amount was. (As first written the opinion said: "due to the estate from these proceeds," by which was meant "due" because part of such proceeds were being withheld therefrom, but since that term

seems likely to be misunderstood that part of the opinion has been modified.) Defendant says that the opinion holds that if he used the funds of the estate in his hands to pay the personal debts of the administrator, he did so at his own risk and that if it was not proper for him to do so, the judgment against him must be affirmed. This he contends would subject him to imprisonment, under Section 66, Revised Statutes 1929, if he does not pay over the amount of the judgment to the administrator, even though he does not have this amount of money and cannot get it, because he has spent it all. It is enough to say that there is no question of imprisonment for debt before us on this record, because defendant has not been imprisoned; because he certainly will not be if he satisfies the judgment which we cannot assume he will not do; and because the question decided herein was only that there was substantial evidence to warrant a finding that defendant had received money belonging to the estate and was wrongfully withholding it therefrom. How this judgment may be enforced, if defendant does not pay the amount found due from him, is not now before us.

The opinion does rule, and we reaffirm it upon the authority there cited, that when a trustee is shown to have received trust money, which belonged to an estate to which it was then immediately due, but instead of paying it to that estate, commingled it with his own money, a prima facie case is made against him, even though he shows that he paid personal debts of the administrator out of the commingled fund, because all money paid out of the commingled fund for purposes other than to or for the benefit of the estate will be, in the absence of a satisfactory showing to the contrary, considered paid out of the trustee's own money and not out of the trust money. Therefore, in the absence of such a showing to the contrary, a jury would be justified, under such circumstances, in finding that such trustee still had the trust money "in his possession or under his control" and was wrongfully withholding it from the estate.

We agree with a recent opinion of the Supreme Court of Illinois that a proceeding to discover assets is not an available remedy to collect a debt due an estate; that "where the relation of debtor and creditor arises for money lent, the debtor owns the money and is indebted to the creditor for it;" and that "consequently the debtor has no money belonging to the creditor, or to the latter's estate, in his possession." [Johnson v. Nelson, 341 Ill. 119, 173 N. E. 77, 88 A. L. R. 849.] However, the Illinois courts have held under their statute, no broader in its scope than ours, that where a fiduciary relation, rather than the relation of debtor and creditor, exists, the summary proceeding does lie. [Blair v. Sennott, 134 Ill. 78, 24 N. E. 969; Mulvihill v. White, 89 Ill. App. 88; Adams v. Adams, 81 Ill. App. 637, affirmed 181 Ill. 210, 54 N. E. 958.] The relation of defendant to this estate was fiduciary. He obtained the fund in ques-

tion as a trustee. He procured his appointment as trustee from the circuit court to foreclose the two deeds of trust owned by this estate. It was his duty, immediately after the foreclosure, to turn over to the administrator the proceeds of the sale (less the expenses thereof and the amount of the mortgages) and his failure to do so did not give him any title to the trust fund or make him a debtor to the estate. He was given credit in this case for such part of the fund as it was shown he paid out for obligations properly chargeable against the estate. We hold that the jury was justified in finding that he had the rest of the funds ''in his possession or under his control'' when he showed only that he had paid some personal obligations of the administrator and a claim to himself out of a bank account in which these trust funds and his own funds (in an amount not shown) were commingled together. This court has held (as have the Courts of Appeals) that, where specific personal property of an estate has been sold and the proceeds deposited in the bank account of the seller, the summary proceeding to discover assets is a proper remedy to compel him to pay the amount of the proceeds to the estate, and that this remedy is not ''confined to a particular fund—the actual money which belonged to the decedent.'' [Tygard v. Falor, 163 Mo. 234, 63 S. W. 672; Clinton v. Clinton, 223 Mo. 371, 123 S. W. 1; Vazis v. Zimmer (Mo.), 209 S. W. 909; Newell v. Kern (Mo. App.), 218 S. W. 443; In re Van Fossen (Mo. App.), 13 S. W. (2d) 1076; for the origin and amendments of this remedy see In re Trautmann's Estate, 300 Mo. 314, 254 S. W. 286; Kelly's Probate Law and Practice, Chapter 17.]

The motion to transfer this case to the Court en Banc is overruled.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur, except *Collet, J.*, not sitting.