NEUHOFF BROTHERS PACKERS

v.

KANSAS CITY DRESSED BEEF COMPANY,

v.

SOUTHERN–PLAZA EXPRESS, INC.

No. 22845.

Kansas City Court of Appeals. Missouri.

Oct. 3, 1960.

A. E. Margolin, F. Philip Kirwan, Norman M. Arnell, Kansas City, for appellant.

John H. Kreamer, Gage, Moore, Park & Kreamer, Kansas City, Turner, Rodgers, Winn, Scurlock & Terry, Dallas, Tex., for respondents.

SPERRY, Commissioner.

This is a damage suit growing out of a sale of beef carcasses by Neuhoff Brothers Packers, plaintiff, to Kansas City Dressed Beef Company, defendant. Southern Plaza Express, Inc., hereafter referred to as carrier, is third-party defendant. Plaintiff had a verdict and judgment against defendant in the amount of $2,157.16 and defendant appeals.

Plaintiff is a meat packer. Its place of business is located at Dallas, Texas. Defendant, a meat processor, has its place of business in Kansas City, Kansas. Defendant had been a customer of plaintiff for many years prior to the occurrence here in controversy. On June 5, 1953, a Thursday, defendant's Mr. Schmidt talked to plaintiff's Mr. Neuhoff, by telephone. Defendant agreed to buy and plaintiff agreed to sell a trailer load of canner and cutter grade beef carcasses, at 19 cents per pound, to be delivered at defendant's plant Friday. Pur-

suant to that agreement plaintiff, on Thursday, at about 4:30 P.M., completed loading 174 quarters of beef, weighing 24,250 pounds, with a contract price of $4,607.50, into a refrigerated trailer of carrier, consigned to defendant. Before confirming the order and loading the shipment, however, plaintiff had ascertained that the shipment would, in the ordinary course of events, reach defendant's place of business at about 8:00 A.M., Friday, June 5th.

Unknown to either of the principles here involved, carrier permitted the shipment to remain at Dallas until 3:00 A.M. Friday and, when it arrived at Tulsa, en route to Kansas City, it was permitted to remain there for three hours. It did not arrive at Kansas City until 9:30 P.M., after defendant's plant had closed for the day. However, Neuhoff and Schmidt had talked during the day by telephone, and there was testimony to the effect that Schmidt had told Neuhoff that defendant would accept the meat Saturday. Carrier tendered the shipment to defendant Friday night but delivery was refused. Saturday morning, tender was again made and acceptance refused; and defendant also refused to accept it Sunday. There is substantial testimony to the effect that defendant agreed to accept it Monday morning. Carrier presented the trailer load of beef at defendant's place of business at about 7:30 A.M., Monday morning. At that time, according to the evidence, the seals on the trailer were unbroken, the refrigeration system was properly working, and the meat was in good condition and suitable for human consumption. At least, the latter fact could reasonably be inferred from testimony regarding the continued proper refrigeration of the cargo.

There is also substantial evidence tending to prove that, early Monday morning, defendant's responsible agent looked at and generally inspected the trailer; that he informed carrier's truck operator that defendant could not unload the shipment for about an hour (another shipment was then being unloaded) and told him to leave the trailer at defendant's plant; that carrier's operator asked if he should keep the tractor connected to the trailer so that the refrigeration system would continue to operate, that it would not do so if the tractor were removed; that defendant's agent said that that was not necessary, that it would keep safely until it could be unloaded about an hour later. The tractor was removed and the trailer load of beef was left at defendant's plant. This was at about 7:30 A.M., Monday.

· The evidence is to the effect that, at about noon, Monday, carrier was notified that defendant would not accept the meat because it was hot. The testimony was that, when the carrier's operator picked up the trailer from defendant's yards, at about noon, the temperature in the sun where the trailer sat was about 95 degrees. The fan, which blew over dry ice in the trailer and ordinarily kept the meat safely cooled to a temperature of from 35 to 40 degrees, was not operating because the tractor was not attached to the cooling system nor to any other source of electricity or power. The temperature in the trailer was higher than it should have been for proper preservation of the meat from spoilage.

The evidence was that the carrier removed the trailer to its garage where refrigeration was provided and, on the following day, again tendered the cargo to defendant, who inspected it. The meat had an odor and defendant refused to accept it unless the price were reduced to 13 cents per pound. Carrier refused to do this and sold it to another processor. Plaintiff received $2,450.54 for the salvage, suffering a loss of $2,157.16, the amount of this judgment.

Defendant does not contend that plaintiff failed to make out a submissible case but, since it raises a variety of questions concerning instructions and evidence, we have set out the evidence rather fully as a background for discussion of the alleged errors.

Defendant says the Court erred in that plaintiff, who called Jacob Schmidt as "an adverse witness," was permitted to cross-examine him over defendant's objection. Schmidt was the president and general manager of defendant company. He also did all of its buying and selling.

■ At plaintiff's instance he testified to the effect that Lester Swanson, an employee of defendant, had the duty of directing and "spotting" incoming trucks containing loads of meat consigned to defendant. Such testimony, from some one of defendant's officers and agents in position of authority and who had knowledge of the fact, was an important element of plaintiff's case. It was proper for it to ask him leading questions, as in cross-examination, for he was an adverse party. Sections 491.030 (adverse party statute) and 1.030 RSMo 1949, V.A.M.S.; 9 Fletcher Cyclopedia Corporations, Section 4215, Pages 17–18. In State ex rel. Bressman v. Theisen, Mo.App., 142 S.W. 1088, 1089, we held that a claim agent of defendant railroad corporation, whose duty it was to investigate the facts concerning the injury which was the subject of the lawsuit, "stands for the company, and, as such, he was a competent witness, as representing the company." See also Hopkins v. J. I. Case Co., Mo., 293 S.W.2d 402, 407. In United States Tire Co. v. Keystone Tire Sales Co., 153 S.C. 56, 150 S.E. 347, 349, 66 A.L.R. 1264, it was held that a corporation can only speak through its officers, and that its officers, may be compelled to testify under the adverse party statute.

Defendant alleges error because plaintiff was permitted to ask impeaching questions of Schmidt on cross-examination. Schmidt was called as a witness by plaintiff, under the adverse party statute. Plaintiff questioned Schmidt only concerning Swanson's authority to "spot" and direct incoming trucks loaded with meat. Thereafter, defendant proceeded to examine Schmidt at length on virtually all phases of the case. His testimony at the trial differed from that given in interrogatories, on many material points, which plaintiff endeavored to show on cross-examination.

■ Plaintiff could only be bound, if at all, by Schmidt's testimony *as to matters about which plaintiff examined him.* Lolordo v. Lacy, 337 Mo. 1097, 88 S.W.2d 353, 355; Missouri Cafeteria v. McVey, 362 Mo. 583, 242 S.W.2d 549, 555–556. As to testimony given by Schmidt at the solicitation of defendant, he was defendant's witness and was subject to cross-examination and impeachment by plaintiff. State ex rel. Hospes v. Branch, 151 Mo. 622, 52 S.W. 390, 396; Tinsley v. Washington Nat. Ins. Co., Mo.App., 97 S.W.2d 874, 880; Wigmore on Evidence, 3rd Ed., Page 431.

■ Defendant also predicates error on the grounds that it was not permitted (at least fully) to propound leading questions to Schmidt. Schmidt's interest in the case was identical with that of defendant corporation. He was hostile to the interests of plaintiff and his testimony so indicated. Defendant's only cited authority for its position is Missouri Cafeteria v. McVey, 337 Mo. 1097, 242 S.W.2d 549, 555, where it was held that the trial court committed *no error in permitting defendant to cross-examine a witness* who had been called by plaintiff as an adverse witness. The case does not hold that it is error to *deny* the right of cross-examination under the same circumstances. The approval or disapproval of leading questions is within the sound discretion of the trial judge. Harrison v. St. Louis San Francisco Ry. Co., 339 Mo. 821, 99 S.W.2d 841, 845; State v. Duestrow, 137 Mo. 44, 84, 38 S.W. 554; Cunningham v. Doe Run Lead Co., Mo., 26 S.W.2d 957, 961. In Daudt v. Steiert, Mo., 205 S.W. 222, 225, the Supreme Court said: "The entire subject of the manner of the examination of witnesses in open court is confided, * * *, to the sound discretion of the trial judge. * * * unless it be shown, therefore, that the party complaining has been prejudiced, he should not be heard." Defendant was in on wise prejudiced by the court's ruling in this case and, in fact, the rulings were proper under

the circumstances. The right to cross-examination is said to turn "solely upon the emotional attitude of the witness to the party in general." Wigmore on Evidence, 3rd Ed., Page 430.

Defendant complains of error in plaintiff's Instruction No. 1, "because it fails to submit the last modification of the contract." The instruction consists of two printed pages, too long to justify its duplication here.

It required the jury to find the facts, generally, in accordance with those shown in evidence. It required findings in the conjunctive to the following effect: that plaintiff sold to defendant, by telephone conversation on Thursday, June 4th, the cargo of meat, at 19 cents per pound, for delivery the morning of June 5th; that the beef was loaded and shipped at 4:30 P.M., June 4th; that it did not arrive at Kansas City until 8:00 P.M., June 5th, and defendant refused to accept it; that Schmidt (for defendant) agreed with plaintiff to accept same on June 6th but refused to do so when delivery was tendered on that date; that it was, and remained, in sound and proper condition until June 8th; that the meat was delivered at defendant's plant at 8:30 A.M., Monday, June 8th, in good condition; that defendant's employee, Swanson, inspected the truck and informed carrier that same would be accepted and unloaded within an hour; that he instructed the driver to unhook the trailer and leave the truck; that carrier unhooked the trailer and left the cargo at defendant's plant, in a temperature of 83°–89° for a period of three hours, without circulating air, until Schmidt notified Neuhoff that defendant would not take the meat at the agreed price; that, at that time, the meat had depreciated in value because of spoilage due to improper refrigeration; and that plaintiff received the sum of $2,450.34 for it. This Instruction was, in effect, further explained and clarified by plaintiff's Instruction 3, which should be read with Instruction 1.

■ Defendant cites State ex rel. Place v. Bland, 353 Mo. 639, 183 S.W.2d 878, and Carman v. Harrah, 182 Mo.App. 365, 170 S.W. 388. These cases hold that, in suits on contracts which have been modified, the submission must be as to the latest modification, since it supersedes the others. The case here was submitted on the final modification of the contract. The jury was required to find the facts reflecting the original agreement, and all other negotiations and agreements, as well as the final agreement, and its breach. The Instruction submitted plaintiff's theory of the case. It is within the pleadings and the evidence. We find no reason to condemn it. Raymond, Missouri Instructions, P. 39, P. 43; 77 C. J.S. Sales § 150, p. 874.

■■ Defendant's Instruction 5 is based on the same theory as that submitted in plaintiff's instructions. Defendant may not predicate error on a theory of the case which it has also submitted. Millhouser v. Kansas City Public Service Co., 331, Mo. 933, 55 S.W.2d 673, 676. Defendant also claims that Instruction 1 is erroneous because it does not negative the affirmative defenses of abandonment and estoppel. There is no substantial evidence in the record tending to prove abandonment by mutual agreement, or that plaintiff did anything which would constitute an abandonment, or estop it from denying abandonment.

It is urged that error was committed by the Court's refusal to give defendant's Instructions 9, 13 and 14 on its pleaded defense of abandonment and estoppel. As we have stated in the preceding paragraph, there was no substantial evidence of abandonment or of estoppel. It was not error to refuse to give those instructions.

The judgment should be affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. All concur.