RUSSELL DOWNEY et al., Petitioners, v. DR. PAUL S. SCHRADER, Superintendent of State Hospital Number Two.—No. 39187.—182 S. W. (2d) 320.

Court en Banc, July 3, 1944.

*Roy N. DeVault* for petitioners.

*Roy McKittrick,* Attorney General, and *Robert J. Flanagan,* Assistant Attorney General, for respondent.

ELLISON, J.—Habeas corpus. The petitioner is confined in State Hospital Number 2 for the Insane at St. Joseph as an insane patient, and seeks his release by our writ through his next friend and attorney. He was committed to that institution by the county court of Jackson County, pursuant to Art. 2, Chap. 51, Sec's 9321-9359.[1] We refer to these statutes hereafter as the county court statutes. Petitioner bases his application for the writ solely on the con-

[1] References to our statutes are to R. S. Mo. 1939 and same section numbers in Mo., R. S. A., unless otherwise shown.

tention that the statutes are unconstitutional.

It is asserted that Sec. 34, Art. VI of the Missouri Constitution vests jurisdiction to hold such lunacy inquisitions solely in the probate courts; that Sec. 36, Art. VI, defining the jurisdiction of county courts, does not authorize them to hold lunacy inquisitions; that under Art. III of the Constitution the judicial power is vested solely in the probate court; that the county court statutes, supra, are class legislation violating Sec. 53, Art. IV of the Constitution; and that the Act by which said statutes were passed, Laws Mo. 1909, p. 572, is invalid because it contravenes Sec. 28 of Art. IV of the Constitution, providing that no legislative bill shall contain more than one subject, which shall be clearly expressed in its title.

Summed up, the petitioner's theory is that the above statutes either are wholly and totally void for the reasons stated; or if not that, then the probate courts of the state have sole jurisdiction to conduct lunacy inquisitions; and the only jurisdiction possessed by the county courts is to commit insane persons to the State eleemosynary institutions *after* they have been adjudged insane by the probate courts.

We take up these assignments in reverse order, since the broader contentions should be considered first, and begin with the point that the 1909 Act embodying the statutes contains more than one subject, and that the legislative title was bad. The title of the Act merely recited that it repealed two articles of Chapter 72 and three articles of Chapter 118, R. S. 1899, relating to state eleemosynary institutions, together with all acts amendatory thereof (save specified sections), and substituted therefor three new articles, relating to the same subject and bearing the same numbers, in said chapter 118. That chapter of R. S. 1899 was first enacted by Laws Mo. 1889, p. 112, and its title was "An Act to define the eleemosynary institutions of the state, and to provide for a uniform . . . government of the same." Under holdings on similar facts it is the law that the title of the original 1889 Act thereby became the title of the 1909 substituted sections; and if these new sections were properly within the purview of that title they are not unconstitutional as against Sec. 28, Art. IV, supra. State ex rel. Mueller Baking Co. v. Calvird, 338 Mo. 601, 608(3), 92 S. W. (2d) 184, 188(6).

We think it is clear that they are within the title. Where the title of a legislative bill is general, it is more comprehensive than when it descends to particulars. State ex rel. Fire District of Lemay v. Smith (No. 39048, decided concurrently herewith, 353 Mo. 807, 184 S. W. (2d) 593, 596 (11). See numerous other cases cited in 29 Mo. R. S. A., p. 38, note 5, p. 39, note 6. All these county court statutes are on the general subject of state eleemosynary institutions. And while there are thirty-nine of them, it will be found on examination that all deal with the admission of persons afflicted with any form of insanity into the state hospitals established for their care and treatment;

provide a procedure therefor; and cover the matter of their release, pay for their maintenance and other pertinent details. There is no merit in this contention.

The next contention is that the 1909 Act embodying these county court statutes is class legislation violating Sec. 53, Art. IV of the State Constitution. Petitioner's brief does not clearly-point out the respects in which the statutes are thought to be class legislation, but one of them seems to be that the Act is complicated and involved. The brief asserts that the pretended "information" (a verified statement to be filed under Sec. 9335) "is buried 14 sections deep in a lot of rules and regulations concerning 'pay patients,' clothing, eleemosynary hooey and psychiatric doodlebugs." Again it is pointed out that the first section, Sec. 9321, says any patient may be discharged or paroled whenever in the judgment of the Superintendent and his staff such should be done, their decision being final; and that no county may remove an indigent insane person unless such consent be obtained.

This, apparently, is the petitioner's main complaint—that the statutes are special and discriminatory against indigent persons. But it is to be remembered that these hospitals are "eleemosynary" institutions, which means they are operated mainly as public charities for the benefit of indigents who suffer from mental disease (14 Words & Phrases, Perm. Ed., pp. 225-6), though pay patients also are admitted. Under Sec's 9328 and 9350 the several counties must pay for the support and maintenance of their insane poor; and the purpose of Sec. 9321, supra, doubtless is ▮ to prevent them from withdrawing that support unless the Superintendent and his staff deem the patient in condition to be removed. We are unable to find anything in these statutes justifying the criticism made in this assignment.

The next assignment challenges the constitutional power of the county courts to hold lunacy inquisitions. In this connection it should be remembered the court does not hold an inquisition unless the proposed patient is indigent and the County Court will have to pay for his keep. See Sec's 9335-9339. If he is to be a pay patient the application is made directly to the Superintendent of the State Hospital. See Sec's 9322-9327. But to go on. Petitioner maintains the exercise of the power of inquisition would necessarily infringe on the judicial power, which Article III of the Constitution confides to a separate magistracy, that is, the courts. We cannot agree, for county courts do have certain judicial powers. Petitioner's brief overlooks Sec. 1, Art. VI of the Constitution, which provides that (italics ours), "The judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in a Supreme Court, the St. Louis Court of Appeals, circuit courts, criminal courts, probate courts, *county courts* and municipal corporation courts." From this section it is clear that both

probate courts and county courts exercise some judicial powers. These powers are defined in other sections of the Constitution, which brings us to petitioner's last assignment—that the probate court constitutionally has exclusive jurisdiction of lunacy inquisitions.

Sec. 34, Art. VI of the Constitution provides that probate courts (italics ours), "shall have jurisdiction over *all matters* pertaining to probate *business,* to granting letters testamentary and of administration, the appointment of guardians and curators of minors *and persons of unsound mind,* settling the accounts of executors, administrators, curators and guardians; . . . ." Under the authorization of this provision the Legislature has passed statutes, now Art. 1, Chap. 18, Sec's 447-508, authorizing probate courts to hold lunacy inquisitions, appoint guardians and to administer the estates of insane persons.

The earliest prototype of these statutes is found in 1 Territorial Laws, Chap. 191, p. 507, where an Act passed in 1817 vested that probate jurisdiction in the circuit courts. In 1825 the Legislature created probate courts and authorized the exercise of the above powers by them. 1 R. S. 1825, sec. 1, p. 268, sec. 1, p. 429 et seq. The jurisdiction was transferred to the county courts by R. S. 1835, secs. 1-48, pp. 322-327. There it remained for thirty years until G. S. 1865, chap. 40, p. 234, vested it in the county *or* probate courts. At and prior to that time and, indeed, up to the adoption of the present Constitution of 1875, probate courts were not constitutionally created, and existed (save under the 1825 Act) only in parts of the state by legislative act. Since the adoption of the present constitution they have exercised exclusively the probate jurisdiction outlined above, including lunacy inquisitions in connection therewith. And also since 1817 there have been statutes like the present Sec's 497 and 498, authorizing the circuit, probate and county courts, successively, to make orders for the restraint of the violently insane. 1 Terr. Laws, p. 508; R. S. 1825, sec. 10, p. 433; R. S. 1835, secs. 45, 46, p. 327; G. S. 1865, secs. 45, 46, p. 238.

Considering now the county courts. Sec. 36, Art. VI provides (italics ours) : "In each county there shall be a county court, which shall be a court of record, and shall have *jurisdiction* to transact all county and such other *business* as may be prescribed by law. . . . ." These courts also were first constitutionally created by the Constitution of 1875, but they had existed in all counties long prior to that. They were very important in those earlier days of the State's development. The first state asylum for the insane was established at Fulton under Laws Mo. 1847, p. 60. The Official Manual, 1943-1944, p. 738, states it was completed in 1851, and is the oldest institution of its kind west of the Mississippi River. Sec. 15 of the Act provided that the "county courts" could send their insane poor to the institution.

Four years later Chapter 11, R. S. 1855, p. 219 et seq. was adopted, covering the same general ground as the present county court statutes, supra, do now. It required the counties to pay for the keep of their insane poor and provided for a hearing by the county court on the sanity of proposed indigent patients, but not of pay patients. This was the historical background behind Sec's 34 and 36, Art. VI of the Constitution when it was adopted in 1875.

We have italicized the words petitioner's brief stresses in arguing that Sec. 34 vests in the probate court alone the power to hold lunacy inquisitions. It points out that the section says that court shall have *jurisdiction* over *all matters* pertaining to *probate business*, and to the appointment of guardians and curators of minors and *persons of unsound mind*. And it declares that language preempts the jurisdictional field. But Sec. 36, relating to county courts, uses the same language. It says the county court shall be a *court of record* and that it shall have *jurisdiction* to transact *all county business* and such *other* business as may be prescribed by law. Both sections use the words jurisdiction and business.

When the county court holds a hearing on the sanity of a proposed indigent county patient for whose keep it will have to pay, it is exercising its jurisdiction as a court of record to transact county business, or at least business prescribed by law. When the probate court holds a similar hearing for the purpose of appointing a guardian and administering an estate, it is transacting probate business. But they are not the same, and have not been through the years. Matters of probate business, as commonly understood and under all the authorities, pertain to the proving of wills, the appointment of guardians and curators, and the administration and settlement of estates of decedents, incompetents and the like. 3 Words & Phrases (Perm. Ed.), p. 203; 26 ibid., p. 750; 34 ibid., p. 59.

The validity of these county court statutes has been recognized a number of times. Ex parte Higgins v. Hoctor, 332 Mo. 1022, 1026, 62 S. W. (2d) 410, 411, 91 A. L. R. 74, said they were enacted "evidently to give the county court the duty of caring for indigent persons found to be insane." Ussery v. Haynes, 344 Mo. 530, 537(1), 127 S. W. (2d) 410, 414(1) treated them as controlling. VanLoo v. Osage County, 346 Mo. 358, 366(3), 141 S. W. (2d) 805, 809(2, 3) ruled the probate court has concurrent jurisdiction with the county court to hold sanity inquisitions upon poor persons, but no authority to commit them to a State Hospital. And Painter v. Painter, 206 Mo. App. 312, 228 S. W. 538, squarely decided, on a *construction* of Sec's 34 and 36, Art. VI of the Constitution, that the probate courts do not have exclusive jurisdiction of sanity inquisitions as against the county courts. The general authorities show such lunacy inquisitions are governed by statute, 28 Am. Jur., sec. 10, p. 661; and

that historically the power was derived from the Kings of England, thence passed to the chancellor, and in this country to the people who have left it with the Legislature. 32 C. J., secs. 162, 165, pp. 626, 628. The Legislature has implemented the power through the county court and probate court statutes ·mentioned in the beginning. ▮ The statutes being valid, the petitioner should be remanded to the custody of the respondent as Superintendent of State Hospital No. 2. It is so ordered. All concur.