TANEY COUNTY, one of the Political Subdivisions of the State of Missouri; Forsyth Special Road District, one of the Political Subdivisions of Taney County, Missouri; and The Forsyth Reorganized School District, being No. R–3 of Taney County, Missouri, being one of the Political Subdivisions of Taney County and State of Missouri, Plaintiffs-Appellants,

v.

The EMPIRE DISTRICT ELECTRIC COMPANY, a Corporation, Defendant-Respondent.

No. 46428.

Supreme Court of Missouri, Division No. 1.

Feb. 10, 1958.

Douglas Mahnkey, A. H. Blunk, Forsyth, for appellants.

Richard K. McPherson, Joplin, for respondent.

HOLMAN, Commissioner.

Taney County and certain political subdivisions of said county commenced this

action by the filing of a petition for review of the order of the State Tax Commission of Missouri (hereinafter referred to as the Commission) reducing the assessed valuation for the year 1956 of defendant's hydroelectric dam and related properties known as the Ozark Beach project. The circuit court affirmed the order of the Commission and plaintiffs have appealed from that judgment. We have appellate jurisdiction because (among other reasons) one of the parties hereto is a county. Article V, Section 3, Constitution of Missouri 1945, V.A. M.S.

The facts relevant to a determination of the question raised on this appeal are not in dispute. They appear in a stipulation of the parties filed in the trial court. We will briefly state the facts and procedural background which preceded the questioned order of the Commission.

The assessor of Taney County, Missouri, originally assessed the Ozark Beach project for the year 1956 at $982,570. Thereafter, the defendant appeared before the Taney County Board of Equalization and protested said assessment requesting that same be reduced to the true value of the property, which request was denied by said board. At a later date the Commission made a blanket increase of 50% on all assessments in Taney County and the assessment on the Ozark Beach project was thereby increased to $1,473,855. On September 27, 1956 (within the time provided by law), defendant filed with the Commission a petition for review of the foregoing assessment of said Ozark Beach project. On the following day it filed a petition for review of the assessment of the other property owned by it, in Taney County, but at the subsequent hearing of these petitions, defendant did not urge the merits of said latter petition and the assessed valuation of the properties described therein has remained the same, and hence we will make no further mention of that petition in this opinion. The Commission ordered that a hearing be held upon

defendant's petition for review at the county courtroom at Forsyth in Taney County on October 26, 1956. In attendance at that hearing were the assessor, each of the members of the county court, and the prosecuting attorney of Taney County, as well as representatives of the defendant, and, at that time, evidence was heard by the Commission concerning the valuation of the property in question which, for reasons that will hereafter appear, need not be detailed herein.

On November 9, 1956, the Commission entered its order reciting that after giving consideration and study to the evidence, facts and data before it, it found that the proper assessed valuation of the property heretofore described should be $800,000. On December 3, 1956, the plaintiffs filed the instant petition in the circuit court of Taney County, Missouri, for review of the foregoing order of the Commission. The cause was heard in the circuit court on April 16, 1957. At that hearing (in addition to the other facts herein stated) it was agreed that the county clerk had certified and delivered the tax books to the county collector on October 31, 1956, and that the assessment of the property in question was shown thereon at the sum of $1,473,855. It was also stipulated that the taxes due and payable on said property upon an assessment of $1,473,855 would be $33,014.35, and that the taxes for said year upon an assessment of $800,000 would be $17,920, so that the amount in controversy herein is $15,094.35.

On April 25, 1957, the court entered its judgment affirming the order and assessment of the Commission.

 It has been stated that in a review of this nature it is "the duty of the trial court, as it is ours on appeal, with proper deference to findings involving credibility of witnesses, to determine whether the commission 'could have reasonably made its findings, and reached its result, upon consideration of all of the evidence

before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence.' " Ulman v. Evans, Mo.Sup., 247 S.W.2d 693, 694. The trial court found that the evidence reasonably supported the findings and result reached by the Commission. In this connection we observe that there appears to have been ample evidence from which the Commission could reasonably have made its findings and resulting order. However, the main contention of the plaintiffs in the trial court, and the only point briefed here, is that the order of the Commission was in excess of the statutory authority or jurisdiction of the Commission and was contrary to the procedure provided by law. That contention is within the scope of the judicial review provided for in Section 536.140 (unless otherwise indicated, all statutory references are to RSMo 1949, V.A.M.S.) as amended, Laws 1953, p. 679, Section 2. Stated more precisely, the contention made by plaintiffs upon this appeal is that the Commission was required to make its order on the date of the hearing (October 26, 1956) and, in any event, not later than October 31, 1956 (the last date upon which the county clerk could deliver the tax books to the county collector in compliance with Section 137.290), and hence the order made on November 9, 1956, is said to be void.

It is undisputed that the Commission has the power and, in proper instances, the duty, to raise or lower the assessed valuation of real or tangible personal property. Section 138.380. It is provided in Section 138.460 that if it appear by investigation or upon written complaint of any taxpayer that assessments have not been made in compliance with the law the Commission may order a hearing to be held, after certain prescribed notices are given, in the county where the assessment to be reviewed was made.

The statutory provision upon which plaintiffs primarily rely is subsection (1) of Section 138.470 which is as follows: "1. The commission, or any member thereof, or any duly authorized agent, shall appear at the time and place mentioned in said order, and the assessing officer, upon whom said notice shall have been served, shall also appear with said assessment roll. The commission, or any member thereof, or any duly authorized agent thereof, as the case may be, *shall then and there hear and determine as to the proper assessment* of all property and persons mentioned in said notice, and all persons affected, or liable to be affected by review of said assessments thus provided for, may appear and be heard at said hearing. In case said commission, or any member or agent thereof who is acting in said review, shall determine that the assessments so reviewed are not made according to law, the county clerk shall, in a column provided for that purpose, place opposite said property the lawful valuation of the same for assessment." (Italics ours.)

As heretofore indicated plaintiffs contend that the provision, "shall then and there hear and determine as to the proper assessment," italicized above, should be construed to mean that the Commission must make its determination as to the proper assessment at the time and place of the hearing and not thereafter. Although not clearly stated, they seem to advance as an alternative theory the assertion that in any event the order must have been made by October 31, 1956, because otherwise the county clerk would not have possession of the assessor's book in order to make the required entries in the event the valuation of the property for assessment is ordered to be changed by the Commission. The foregoing statutory provisions and certain definitions of the phrases, "then and there" and "hear and determine," are the only authorities cited by plaintiffs in support of their contentions.

■ It may be that a strict, literal construction of the phrases in question would lead to the conclusion that the valuation of the property must be determined at the time and place of the hearing. On the other hand, it is said by defendant that the phrase "then and there" applies to the hearing, which admittedly must be held at the time

and place specified in the order and notice, but does not apply to the word "determine." It is, of course, elementary that the primary rule to be applied in the construction of statutes is to ascertain and give effect to the legislative intent.

As stated, it is obvious that the hearing must be held at the time and place (then and there) specified in the order and notice. However, it is difficult for us to conclude that the legislature intended to require that the valuation be determined at the very time and place of the hearing. The transcript in the instant case is illustrative of the fact that highly technical and involved testimony as to the methods to be followed in determining the value of certain property is given at these hearings. In that situation it would seem that the Commission would often need some period of time to study and consider the testimony and to make the mathematical calculations required in arriving at a sound and judicious conclusion as to a proper value.

■ However, we have decided that we need not actually determine whether the provision in question did or did not require a decision at the time and place of the hearing. This for the reason that, even if it is assumed that such was required by the statute, we think the provision is directory only and hence we conclude that an order entered after the date of the hearing would not be invalid.

"As a rule a statute prescribing the time within which public officers are required to perform an official act regarding the rights and duties of others, and enacted with a view to the proper, orderly, and prompt conduct of business, is directory unless it denies the exercise of the power after such time, or the phraseology of the statute, or the nature of the act to be performed, and the consequences of doing or failing to do it at such time are such that the designation of time must be considered a limitation on the power of the officer. When the legislature prescribes the time when an official act is to be performed, the broad legislative purpose is to be considered in deciding whether the time prescribed is directory or mandatory. If the statute is mandatory there must be strict conformity, but if directory the legislative intention is to be complied with as nearly as practicable." 67 C.J.S. Officers § 114(b), p. 404.

Sutherland states the rule as follows: "For the reason that individuals or the public should not be made to suffer for the dereliction of public officers, provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory. A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered a limitation of the power of the officer." 3 Sutherland, Statutory Construction, 3rd Ed. (1943), p. 102. Missouri cases adhering to the quoted principles are, State ex rel. Rogersville Reorganized School District v. Holmes, 363 Mo. 760, 253 S.W.2d 402; Schlafly v. Baumann, 341 Mo. 755, 108 S.W.2d 363; State ex inf. Gentry v. Lamar, 316 Mo. 721, 291 S.W. 457; Mead v. Jasper County, 322 Mo. 1191, 18 S.W.2d 464; St. Louis County Court v. Sparks, 10 Mo. 117.

■ In considering Section 138.470(1) in the light of the quoted discussion of the applicable rules, it becomes obvious that the purpose of that and the other sections cited was to provide an orderly method for the review, by the Commission, of the valuations placed upon property by assessors and local boards of equalization to the end that all real property and tangible personal property shall be assessed and valued according to law. It, of course, would be desirable that the Commission complete its review of all pending assessments by October 31 of each year so that completed tax books could be

delivered to the collector on that date. However, the instant statute does not provide that the Commission may not enter orders affecting valuations after the date of the hearing or after October 31. Moreover, no consequences are prescribed for the failure of the Commission to enter orders on the date of the hearing or prior to October 31.

It should also be noted that if the hearing is held prior to October 31, no person would be injured or inconvenienced by the failure of the Commission to make its order on the date of the hearing, as time would remain within which the order could be made and the valuation entered in the tax book before it is to be delivered to the collector. It would be a strange interpretation, indeed, which would ascribe to the legislature an intent to enact a mandatory provision whereby the Commission would be fully clothed with the authority to reduce the valuation of the property in question, provided it acted on October 26, 1956, but that it would have been completely devoid of any power to enter the order on October 27, 1956. Such an interpretation would result in defendant being required to pay additional taxes in the amount of $15,094.35 solely by reason of the delay of the Commission over which the defendant had no control. It should be obvious that the legislature did not intend that the provision be mandatory.

■ We think the foregoing illustration and reasoning would also apply to the instant order which was entered after October 31, to-wit, on November 9, 1956. The only person suffering any inconvenience by the slight delay of the Commission was the county clerk who was required thereby to do a small amount of additional work. The clerk knew that the petition to review the valuation of the property in question had been heard by the Commission and was being considered by it. When a decision had not been made by October 31, the clerk should have delivered the tax books to the collector showing thereon the taxes due on all of the property listed therein except the property in question. When the order fixing the valuation of that property was thereafter made by the Commission on November 9, 1956, it became the duty of the county clerk to forthwith prepare a supplemental tax book extending the taxes upon the instant property in accordance with the valuation placed thereon by the Commission and deliver the same to the collector. Section 137.300. State ex rel. Thompson v. Jones, 328 Mo. 267, 41 S.W.2d 393; State ex rel. Thompson v. Collier, 328 Mo. 246, 41 S.W. 2d 400. Ample time remained for defendant to thereafter pay the taxes so extended before they would have become delinquent on January 1, 1957.

■ It should also be noted that the duties being performed by the Commission under Section 138.470 are quasi-judicial in nature. That being true, it is unlikely that the legislature intended to enact a mandatory provision which would require instantaneous or hasty decisions. It is common knowledge that courts and administrative bodies performing judicial or quasi-judicial functions are often required to take some amount of time to study and deliberate before arriving at a determination of the matter at issue.

■ As previously indicated, we rule that the provisions of Section 138.470(1) are directory only and do not render invalid the order of November 9, 1956, reducing the assessed valuation of defendant's property heretofore described.

The judgment of the circuit court is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.