In the Matter of the ESTATE of John W. MYERS, Deceased, Appellant,

.Laclede Gas Company, a Corporation, Petitioner-Respondent.

No. 50358.

Supreme Court of Missouri,

En Banc.

March 9, 1964

W. W. Sleater, III, and Suelthaus & Krueger, St. Louis, for appellant.

Whittington & Whittington, Allen H. Whittington, Mildred Whittington, Malloy J. McQueen, Richard L. Eckhart, Charles F. Hamilton, St. Louis, for respondent.

HOLMAN, Judge.

■ In this case Laclede Gas Company sought to recover an alleged trust fund amounting to $1,423.44 from the estate of John W. Myers, deceased. The proceeding was commenced by the filing of a petition by Laclede in the Probate Court of the City of St. Louis under the provisions of § 473.357 (unless otherwise stated all statutory references are to RSMo 1959, V.A. M.S.). The petition was denied by the probate court. Upon appeal the circuit court found in favor of Laclede. The Estate duly appealed to the St. Louis Court of Appeals and that court reversed the judgment of the circuit court. In re Myers' Estate, 368 S.W.2d 925. Upon application by Laclede, we ordered the case transferred to this court and it "will be finally determined by the Supreme Court the same as on original appeal." Civil Rule 84.05(h), V.A. M.R.; Art. V, § 10, Constitution of Missouri, 1945, V.A.M.S.

The facts are not in controversy. An agreed statement of facts was filed in the probate court and refiled in the circuit court upon the trial de novo there. In our statement of the facts we will adopt (without the use of quotation marks) portions of the factual statement appearing in the court of appeals opinion.

John W. Myers died on January 3, 1961, and at the time of his death was the sole owner of Myers Hardware and Paint Company located at 5350 Devonshire Avenue, St. Louis, Missouri. On December 8, 1958, the decedent and the petitioner, Laclede Gas Company, entered into a written agreement. The pertinent parts of said agreement provided for the appointment of the decedent as one of the contracting agents of petitioner for the collection of bills for gas service and appliances on condition, among other things, that he keep a strict and correct account of all collections made on forms prepared and furnished by the petitioner; that he keep separate and distinct from the decedent's own funds and other property all moneys collected under the agreement

and all papers and records pertaining to such collections; that he deliver each day to the petitioner at its office all the moneys collected on the previous day. Under the agreement decedent was to "hold in trust" for the petitioner all the moneys collected until such moneys were paid to the petitioner. Decedent had to keep the stubs removed from bills, so that a record of collections would be available in the event of loss of moneys by holdup, burglary, etc. For the performance of this collection service the decedent was to receive a stated compensation set out in the agreement.

It was further stipulated that on and prior to January 3, 1961, and subsequent to December 8, 1958, decedent had accepted payment of gas bills due to the petitioner and had made periodic remittances to the petitioner for those collections.

It was agreed that at the time of the death of John W. Myers he had collected but not remitted to the petitioner the sum of $1,423.44, said amount of money having been paid to John W. Myers or to his employees by 110 customers of the petitioner. With one exception, all of those bills were collected on or after December 29, 1960, and a large number of them were collected on the date of Mr. Myers' death, i. e., January 3, 1961. The amounts so collected were deposited in a bank account in the Southwest Bank of St. Louis carried in the name of John W. Myers, individually, "said account being subject to withdrawal upon checks bearing the signature of 'Myers Hardware Company by John W. Myers, or Florence E. Myers.' "

On January 3, 1961, Florence Myers, widow of John W. Myers, issued and delivered to petitioner a check for $846.25, and on January 5, 1961, issued and delivered another check for $577.19. Those checks totaled $1,423.44 which is the amount sought to be recovered in this action. Both checks were returned to the petitioner by the Southwest Bank of St. Louis because of the death of John W. Myers. The described bank account was the only bank account

owned and carried by the decedent and all of his business accounts and personal bills were paid by checks drawn on that account. On the date of the death of John W. Myers, the balance in the Southwest Bank of St. Louis, to the credit of his estate, was $2,-945.29, and the claims filed and allowed against said estate were far in excess of the assets.

The petition filed by Laclede bases its right to recover the fund in question upon § 473.357, which reads as follows:

"If a person files in the probate court a verified petition alleging that the decedent was not and that the petitioner is the owner of personal property described therein, and that it is in the possession of the executor or administrator, and alleges how he acquired ownership thereof and that possession of the property is being wrongfully withheld from him by the executor or administrator, and prays that the court determine the title thereto and order and direct the executor or administrator to deliver the property to the petitioner, a notice and a copy of the petition shall be served on the executor or administrator, who, within ten days thereafter, shall file answer to the petition. If the answer does not admit the allegations of the petition the matter shall be set for hearing by the court and tried upon the issues under the petition and answer, and judgment shall be rendered according to the finding and for costs."

The main contention of appellant is that petitioner was not entitled to recover because the specific money collected was not in existence since it had been deposited in decedent's bank account, and that said money could not be recovered as a trust fund because such would require equitable action to trace the money collected into the Myers bank account, which relief the probate court has no jurisdiction to render. Appellant therefore concludes that a debtor-creditor relationship existed between Laclede and

deceased and hence that Laclede was limited to obtaining allowance of a general claim against the estate.

■ It will be noted that § 473.357 provides a procedure whereby property wrongfully withheld *by* an executor or administrator may be recovered in the probate court as distinguished from the procedure specified in § 473.340 (discovery of assets) which permits a recovery of property wrongfully withheld *from* an executor or administrator. We agree that the procedure authorized by § 473.357 will usually be employed to recover specific personal property which can be identified in kind. However, we have concluded that said section will warrant a recovery by Laclede in this action if the court had jurisdiction to trace the money collected into the bank account of decedent.

■ Under the terms of the agreement Mr. Myers was to keep the money collected separate from his personal funds, and he agreed to "hold in trust for the company all moneys collected hereunder until such moneys are paid to the company." Therefore, when Myers wrongfully deposited the collections in his personal account it did not create a debtor-creditor relationship but, on the contrary, created a specific trust fund to be held for the benefit of Laclede.

■■ The only question remaining for our decision is whether the court was authorized to trace this trust fund into the account of decedent. It is elementary that, since this proceeding originated in the probate court, the circuit court, on appeal, had only such jurisdiction as could have been exercised by the probate court. It is also well settled that "[j]urisdiction over trusts is one of equity's original and inherent powers." Rawlings v. Rawlings, 332 Mo. 503, 58 S.W.2d 735, 737. The tracing of trust funds is purely equitable in nature. Howard's Estate v. Howe, 344 Mo. 1245, 131 S.W.2d 517. Therefore, the probate court had no jurisdiction to grant the relief

sought by Laclede unless that court has equitable jurisdiction in a case of this nature.

The cases decided by the appellate courts of this state concerning the equitable powers of the probate court are in hopeless conflict. See West, Mo. Digest., Courts, ■■ Some of the cases state unequivocally that such courts have no equitable jurisdiction. Others hold that probate courts may exercise equitable powers in certain instances. A third group of cases hold that probate courts have no *purely* equitable jurisdiction but may invoke equitable principles in determining issues within their jurisdiction. To say the least, these decisions have created a state of uncertainty and confusion regarding the matter of equitable jurisdiction in probate courts. It has been suggested that the appellate courts have been reluctant to hold that probate courts were possessed of equitable jurisdiction because, prior to 1945, the probate judges in most of the counties of this state, were not required to be lawyers. That situation was changed by the adoption of Art. V, § 25, Constitution of Missouri, 1945, V.A.M.S. which provided that thereafter (except for temporary holdovers) probate judges shall be required to have a license to practice law in this state.

In the case before us we are particularly interested in the decisions relating to the jurisdiction of probate courts in matters involving trusts. They are also in conflict. A number of cases hold that probate courts have no jurisdiction in any matter involving a trust. See State ex rel. and to Use of Clay County State Bank v. Waltner, 346 Mo. 1138, 145 S.W.2d 152, State ex rel. North St. Louis Trust Co. v. Wolfe, 343 Mo. 580, 122 S.W.2d 909, Orr v. St. Louis Union Trust Co., 291 Mo. 383, 236 S.W. 642, and Howard's Estate v. Howe, 344 Mo. 1245, 131 S.W.2d 517. Other cases have approved the exercise of equitable jurisdiction by probate courts in trust cases. See Hoffmann v. Hoffmann's Ex'r., 126 Mo. 486, 29 S.W. 603, State ex rel. Stetina v. Reynolds, 286 Mo. 120, 227 S.W. 47,

and Lolordo v. Lacy, 337 Mo. 1097, 88 S. W.2d 353.

Prior to 1955 the jurisdiction of probate courts was specified in § 481.020, RSMo 1949, V.A.M.S., as follows: "Said court shall have jurisdiction over all matters pertaining to probate business, to granting letters testamentary and of administration, the appointment of guardians and curators of minors and persons of unsound mind, settling the accounts of executors, administrators, curators and guardians, and the sale or leasing of lands by administrators, curators and guardians." However, in the enactment of the 1955 Probate Code, that section was repealed and § 472.030 was enacted, which reads as follows: "The court has the same legal and equitable powers to effectuate its jurisdiction and to enforce its orders, judgments and decrees in probate matters as the circuit court has in other matters and its executions shall be governed by chapter 513 RSMo, except that all executions shall be returnable within thirty days unless otherwise ordered by the court. All process of the probate court may be served anywhere within the territorial limits of the state." Although almost nine years have passed since the enactment of § 472.-030, there has been no decision of this court which has construed the meaning of that part of the section which states that probate courts shall have the same equitable powers to effectuate its jurisdiction as circuit courts have in other matters. Upon the subject generally, see "Equity Jurisdiction in Probate Matters Under the New Code," Leslie A. Welch, 1961 Wash.U.L.Qr. 309, and the supplement thereto in 1963 Wash.U.L.Qr. 338.

The statute under consideration was first noticed by this court in the case of North v. Hawkinson, Mo.Sup., 324 S.W.2d 733, 740, but we were not called upon to construe or apply it in that cause. Shortly thereafter, this court decided the case of In re Frech's Estate, Mo.Sup., 347 S.W.2d 224, in which, without any reference to § 472.-030, prior decisions were approved which greatly restricted the equitable jurisdiction of probate courts. Since § 472.030 was not called to the attention of the court, nor considered, in Frech, we will not consider that case in our determination of the meaning and effect of that statute. We next referred to § 472.030 in Mathews v. Pratt, Mo.Sup., 367 S.W.2d 632, 635, wherein we said that "[w]e have no occasion here to construe that section, nor shall we do so. We merely call attention to it. It was ignored in Frech, supra, but it was discussed later in Stark. The proper time and place will come for an adequate construction of the section, but this case presents neither, for this appeal does not arise from probate action or assumed probate jurisdiction."

The St. Louis Court of Appeals considered § 472.030 in the case of Stark v. Moffit, Mo.App., 352 S.W.2d 165. In that case the facts were somewhat similar to those in the case at bar in that plaintiff sought to have his claim paid out of an escrow fund. The court held that the section under consideration did not grant to probate courts jurisdiction in purely equitable matters. In holding that the probate court could not have decreed that plaintiff's claim be paid out of the escrow fund the court said that such "would be, in effect, the establishment and enforcement of a trust in favor of plaintiff on the escrow fund, a purely equitable relief, and beyond the jurisdiction of the Probate Court." 352 S.W.2d 170.

The primary rule to be followed in the construction of statutes is to ascertain and give effect to the intent of the legislature. Taney County v. Empire District Elec. Co., Mo.Sup., 309 S.W.2d 610. When the Sixty-Eighth General Assembly enacted § 472.030, it was certainly aware of the fact that the 1945 Constitution contained a requirement to the effect that one of the qualifications of a probate judge was that he be a lawyer. It also knew of the state of uncertainty and confusion that had resulted from the many conflicting opinions of the appellate courts upon the question of the equity powers of the probate courts.

In view of that situation we think it is reasonable to conclude that in enacting § 472.030 the legislature intended to eliminate the existing state of uncertainty by inserting language in that section which would clarify the extent to which equitable jurisdiction would vest in the probate courts. We think the language used is clear and that the legislature meant just what it said, i. e., that the probate court shall have "the same * * * equitable powers to effectuate its jurisdiction and to enforce its orders, judgments and decrees in probate matters as the circuit court has in other matters. * * *" The circuit court certainly has complete and unrestricted equitable powers in "other matters," i. e., matters properly cognizable before that court. We therefore must conclude that it was intended that this section would give probate courts complete and unrestricted equitable powers "in probate matters." The difficulty in construction may likely arise in determining the proceedings coming within the classification of "probate matters." It is suggested by Judge Welch that "a controversy which necessarily is involved in the winding up of the affairs of a decedent, is a matter pertaining to probate business * * *." 1963 Wash.U.L.Qr. 346. This court has heretofore stated the general rule that "[m]atters of probate business, as commonly understood and under all the authorities, pertain to the proving of wills, the appointment of guardians and curators, and the administration and settlement of estates of decedents, incompetents and the like." Downey v. Schrader, 353 Mo. 40, 182 S.W.2d 320, 323. It is our view that the scope of matters which may be included in the phrase, "probate matters," will not be fully and completely determined until various questions in that regard are, from time to time, presented to the appellate courts for judicial decision. In the case at bar, it may confidently be said that the simple matter of tracing the collections made by Mr. Myers into his bank account, which shortly thereafter came into the possession of his executrix, is a proper exercise of equitable powers by the probate court in a "probate matter." To the extent that the opinion in Stark v. Moffit, supra, is contrary to the views herein expressed, it should no longer be followed.

In an additional brief filed here appellant contends (for the first time) that the petition was not sufficient to raise any equitable issues. We do not agree. The petition and attached exhibits show that Myers made collections in the amount of $1,423.44, which sum was to be held in trust for Laclede; that said sum was in the possession of Myers at the time of his death and is now in the possession of his executrix; that it is wrongfully withheld from Laclede by the executrix, and an order was sought directing the executrix to deliver same to Laclede. Those allegations were sufficient to authorize a finding that the moneys collected constituted a trust fund. Moreover, the case was obviously tried in the circuit court, without objection, upon the theory that petitioner was seeking to establish a trust and, therefore, even if we should assume that the allegations were not sufficient, the issue would be treated as if it had been raised in the pleadings. Civil Rule 55.54, V.A.M.R. We also observe that the equitable issue was briefed by both sides in the court of appeals and was decided by that court. As indicated, this point is without merit.

We feel that we should not conclude this opinion without some discussion of the case of Lolordo v. Lacy, supra. That was a discovery of assets proceeding (originating in the probate court) in which the administrator sought to recover money in the hands of a trustee who had conducted foreclosure proceedings upon real estate owned by decedent. The money had been deposited in the trustee's bank account and commingled with his personal funds. Defendant sought credit for certain expenditures made for the benefit of the estate. We held that the money in the bank account was a trust fund and affirmed a judgment whereby the

administrator recovered from the account the balance found due the estate. That case, considered alone, would ordinarily be regarded as sufficient authority for affirming the judgment in the instant case. However, in view of the many conflicts found in the cases which have decided questions concerning the equitable jurisdiction of probate courts, we hereinbefore concluded that we could not prudently decide this case upon the sole authority of Lolordo. In order to render a decision which we considered would be unquestionably authoritative, we deemed it necessary to construe § 472.030 and to rely primarily upon our consideration thereof as the basis for this decision.

For the reasons heretofore stated, we rule that the trial court properly found that Laclede was the owner of the trust fund of $1,423.44 in the possession of the executrix of the Myers estate, and that said executrix was properly ordered to pay said fund to Laclede.

Judgment affirmed.

EAGER, C. J., and LEEDY, DALTON and HYDE, JJ., concur.

STORCKMAN, J., concurs in result in separate opinion filed.

HOLLINGSWORTH, J., concurs in result and concurs in separate opinion of STORCKMAN, J.

STORCKMAN, Judge (concurring in result).

I think the majority opinion reaches the correct result but that it goes beyond what is necessary to dispose of the case in discussing the statutes and especially § 472.-030, RSMo 1959, V.A.M.S. My view is limited to the proposition that the claim to recover trust funds from the estate of a decedent pertains to probate business (Art. 5, § 16, Constitution of Missouri,

and § 472.020, RSMo 1959, V.A.M.S.), and that the probate court has jurisdiction to decide the issue under authority of Lolordo v. Lacy, 337 Mo. 1097, 88 S.W.2d 353, 357 [16].

Therefore, I concur in the result only.