Albert W.L. MOORE, Jr., Appellant,

v.

Janice C. CAMPBELL, et al., and
Rebbecca Lake Overman,
Respondents.

No. WD 49694.

Missouri Court of Appeals,
Western District.

June 20, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied
Sept. 19, 1995.

Albert W.L. Moore, Jr., pro se.

Kevin R. Thomas, Rebbecca Lake Overman, Independence, for Administrator Ad Litem, Rebbecca Lake Overman.

Before BRECKENRIDGE, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

ELLIS, Judge.

Albert W.L. Moore, Jr. (Moore), an attorney, appeals from an Order of the Jackson County Circuit Court, Probate Division dismissing defendant, Rebbecca L. Overman (Overman), administrator ad litem of the estate of Joseph F. Campbell, deceased, from his suit to recover attorney's fees. Moore's action was based on his representation of Janice C. Campbell (Campbell) in a discovery of assets action on behalf of the Joseph F. Campbell estate. As a result of the discovery of assets proceeding, a judgment of over two hundred thousand dollars ($200,000.00) was entered in favor of Overman as administrator ad litem of the estate.

Janice C. Campbell and her brothers, Joseph E. Campbell and Richard F. Campbell are equal beneficiaries in the estate of their father, Joseph F. Campbell. The two brothers are also co-personal representatives of the estate. Moore demanded payment of his attorney's fees from Janice C. Campbell, Joseph E. Campbell and Richard F. Campbell, as well as from Overman as administrator ad litem. His demands went unheeded.

On March 15, 1994, Janice C. Campbell filed a claim in the probate division against the Joseph F. Campbell estate for legal expenses incurred on behalf of the estate, namely the services of Mr. Moore in the discovery of assets action. On March 17, 1994, Moore filed a petition in Division 2 of the circuit court to recover attorney's fees against defendants Janice C. Campbell, Joseph E. Campbell, individually and as co-personal representative, Richard F. Campbell, individually and as co-personal representative, and Rebbecca Lake Overman, administrator ad litem.

Both Campbell's claim, seeking payment of seventy-six thousand twenty-three dollars and forty-six cents ($76,023.46), and Moore's petition, asking for sixty-one thousand eight hundred thirty dollars and twenty-eight cents ($61,830.28), were for his legal services during the period from September 3, 1992 until February 28, 1994. Campbell's claim included fourteen thousand one hundred ninety-three dollars and eighteen cents ($14,193.18) that she had already paid to Moore. These payments were deducted from the total in Moore's petition and explain the difference in amounts sought.

Overman filed a Motion to Dismiss Moore's petition on May 2, 1994. In her motion Overman stated that there was a duplicity of actions in that Moore had filed an action in the circuit court and Campbell had filed a claim in the probate division for the same attorney's fees. Therefore, she argued, Moore's petition should be dismissed since he had a probate claim on file with the probate division which sought the same relief. On June 9, 1994, Moore's action was transferred from Division 2 to Division 19, the probate division. The reason stated in the transfer order was that "plaintiff [Moore] has a pending probate matter in Division 19." Moore states that he did not receive notice of this transfer.

The probate division issued an order dismissing Defendant Overman as administrator ad litem from Moore's action for attorney's fees. The order did not dismiss the other defendants from the action because they did not join Overman in the motion to dismiss. However, on January 25, 1995, Moore dismissed the remaining defendants without prejudice, thereby making the probate court's order a final judgment from which he brought this appeal.

■ In reviewing the dismissal of a petition, we sustain same if any ground supports the motion, regardless of whether the trial court relied on that ground. *Delmain v. Meramec Valley R–III School Dist.,* 671 S.W.2d 415, 416 (Mo.App.1984). We accord the allegations in the petition every fair and reasonable intendment and, if the averments

state a claim calling for invocation of substantive law principles which entitle plaintiff to relief, we will reverse the dismissal of the petition. *Id.*

Moore raises four points on appeal all of which claim error by the probate division in dismissing Overman from the cause below. In his first point, Moore claims that the probate division of the circuit court did not have jurisdiction to dismiss Overman because the cause below was not a probate matter or probate business. He argues that the probate division's jurisdiction is limited to "probate business" or "probate matters" and that his petition involved neither.

The Constitution of the State of Missouri provides that probate judges of first class counties shall, as of January 2, 1979, "become circuit judges of their respective circuits ... and shall have the same powers and jurisdiction as judges of the circuit court." **Mo. Const. art. V, § 27.4(a).** The elimination of restrictions on the legislature under the former Section 16 of Article V of the Missouri Constitution, "has given the legislature unlimited authority in determining the nature and extent of probate division jurisdiction." 5 J. Borron and F. Hanna, *Missouri Practice: Probate Law And Practice* 534 (1988).

■ The legislature's determination of the jurisdiction of the probate division is found in § 472.020 [1] which states that "[t]he probate division of the circuit court may hear and determine all matters pertaining to probate business...." Section 472.030 provides that the probate division has "the same legal and equitable powers to effectuate and to enforce its orders, judgments and decrees in probate matters as circuit judges have in other matters...." In considering these statutory provisions, the court, in *Webb v. First Nat'l Bank & Trust Co.,* 602 S.W.2d 780 (Mo.App. 1980), found that "the phrase 'probate matters' is not susceptible of concise definition." *Id.* at 782. It went on to opine that §§ 472.020 and 472.030 were not meant to convert the probate court into a court of general jurisdiction. *Id.* And, in *In re Estate of Woodrum,* 859 S.W.2d 259 (Mo.App. 1993), the court held that the probate court

---

1. Unless otherwise indicated, all statutory references are to RSMo 1994.

did not have jurisdiction to decide an action to recover on a surety bond covering a conservator because it was a contract action. In the case at bar, Moore argues that since the underlying matter was an action to enforce equitable and statutory liens for professional services, it should be considered to be more like an action on a conservator's bond than like a probate matter. We disagree.

In *In re Estate of Myers*, 376 S.W.2d 219, 224 (Mo. banc 1964), our Supreme Court stated:

We therefore must conclude that it was intended that this section [§ 472.030] would give probate courts complete and unrestricted equitable powers "in probate matters." The difficulty in construction may likely arise in determining the proceedings coming within the classification of "probate matters." It is suggested by Judge Welch that "a controversy which necessarily is involved in the winding up of the affairs of a decedent, is a matter pertaining to probate business * * *." 1963 Wash.U.L.Qr. 346. This court has heretofore stated the general rule that "[m]atters of probate business, as commonly understood and under all the authorities, pertain to the proving of wills, the appointment of guardians and curators, and the administration and settlement of estates of decedents, incompetents and the like." *Downey v. Schrader*, 353 Mo. 40, 182 S.W.2d 320, 323 [ (Mo. banc 1944) ]. It is our view that the scope of matters which may be included in the phrase, "probate matters," will not be fully and completely determined until various questions in that regard are, from time to time, presented to the appellate courts for judicial decision. In the case at bar, it may confidently be said that the simple matter of tracing the collections made by Mr. Myers into his bank account, which shortly thereafter came into the possession of his executrix, is a proper exercise of equitable powers by the probate court in a "probate matter."

Likewise, we can say with confidence that the award of attorney's fees for professional services rendered in a discovery of assets proceeding on behalf of a decedent's estate during the course of administration is a "probate matter." Thus, Moore's contention that the probate division had no jurisdiction to dismiss Overman because the underlying cause was not a probate matter is without merit. Point denied.

In his second point on appeal, Moore argues that the probate division's order was founded on the idea that his petition was based exclusively on a statutory attorney's lien when, in fact, it was not. His third point claims that the order was based on a false legal proposition that an administrator ad litem of a decedent's estate cannot as a matter of law be subject to an attorney's lien on a recovery for the estate. The two points are related and will be addressed together.

Moore's petition in circuit court was in three counts. Count I alleged that he was retained by Janice C. Campbell to pursue a discovery of assets proceeding on behalf of the Joseph F. Campbell Estate; that he provided valuable legal services resulting in a judgment in favor of the estate in excess of $200,000; that his fees were reasonable; that demand for payment had been made but payment had not been forthcoming; and praying for a judgment for the value of his services. In Count II, Moore claimed an attorney's lien for the value of his services pursuant to § 484.130 and sought foreclosure thereof against "the proceeds of judgment and the current assets of the estate." And, in Count III, Moore alleged that the judgment in the discovery of assets proceeding was void because of failure to comply with § 473.085; that Overman proposed to eviscerate the fund "now in custodia legis;" that her actions would preclude collection of the judgment proceeds; and as a result, would preclude payment of his fees. In his prayer, he asked that Overman be enjoined from selling any assets or paying any claims until final settlement of the estate; that Overman be directed to pay his fees as part of the final settlement; that a receiver be appointed; and for other relief, description of which is unnecessary to disposition of this appeal.

Overman's motion to dismiss the petition alleged that Janice C. Campbell, "by and through her attorney, Albert W.L. Moore," filed a claim against the estate for Moore's attorney's fees on or about March 10, 1994;

that Moore's petition was filed on March 21, 1994; that the claim and the petition were for the same relief; and that under the doctrine of abatement, Moore's petition should be dismissed.

In its order dismissing the petition, the probate division concluded that all three counts of Moore's petition were predicated on an alleged attorney's lien pursuant to § 484.130. It then ruled, relying on *Carter v. Stendeback*, 482 S.W.2d 534 (Mo.App. 1972), as authority, that an attorney's lien cannot be imposed on the undistributed assets of the estate, and therefore, that the motion to dismiss must be sustained. Thus, Moore's arguments in his points II and III are to the effect that the court's dismissal of his petition was erroneous because all three counts were not based on an alleged attorney's lien, and secondly that even if they were, the court erred in finding that the judgment could not be subjected to an attorney's lien.

We first address the probate division's stated reasons for dismissing the petition. As noted, the court relied on *Carter*, 482 S.W.2d 534, in reaching its decision. In that case, John R. Hardcastle died, survived by his second wife, Nellie, and Martha Stendeback, his stepdaughter. Hardcastle had drawn a will in 1954 leaving his entire estate to his first wife, Virginia, Martha's mother. It further provided that if Virginia predeceased him (which in fact occurred), the estate was left to Martha. When Hardcastle died, the will could not be located, and an intestate estate was opened with Nellie's son, John D. Powell, acting as administrator.

At that point, Martha retained the services of plaintiff Carter, an attorney, and entered into a contract providing for a contingent fee of one-third of any sum received by or on behalf of Martha from the Hardcastle estate "by way of suit or compromise, inheritance or devise, or in any other form." *Id.* at 535. As a result of Carter's efforts, Hardcastle's 1954 will was ultimately located and admitted to probate. Nellie elected to take against the will, thereby becoming entitled to one-half of the estate, and Martha became entitled to the other half. Some time thereafter, Martha terminated Carter's services and, al-

though his fee was discussed, they could not reach an agreement and he filed an action against Martha and the administrator of Hardcastle's estate. The case was tried to the court and Carter was awarded judgment against Martha and the estate, and the judgment was declared to be a lien on Martha's distributive share of the estate.

On appeal, the parties agreed that the trial court erred in awarding a money judgment against the administrator of the estate. The Eastern District went on to hold that "an attorney's lien does not properly lie against the undistributed assets of an estate, based on a judgment rendered against a beneficiary." *Id.* at 537. In doing so, the court observed that Carter's claim was not a debt owed by the estate, but rather by a beneficiary of the estate. *Id.*

In the case at bar, the probate division construed *Carter* as standing "for the proposition that [Moore] cannot assert an attorney's lien against the undistributed assets of the Campbell estate...." And, having previously determined that all three counts of Moore's petition were "predicated upon an alleged attorney's lien," the court dismissed all counts.

 The probate division erred as a matter of law in finding that all three counts of Moore's petition involved imposition of an attorney's lien pursuant to § 484.130. "[T]he clear, unambiguous language of the statute provides that '[f]rom the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a *lien upon his client's cause of action or counterclaim.*' § 484.130 (emphasis added)." *Kansas City Area Transp. Auth. v. 4550 Main Assocs.*, 893 S.W.2d 861, 868–69 (Mo.App.1995). The probate division treated the attorney's lien as being one and the same as a cause of action for attorney's fees. Such is not the case. Section 484.130 merely "affords an attorney protection for services rendered by creating a lien in his favor...." *Id.* at 867 (*quoting Satterfield v. Southern Ry.*, 287 S.W.2d 395, 397 (Mo.App. 1956)). The fact that an attorney has a lien against his client's cause of action does not preclude the attorney from collecting his fees by other means, such as an action in *quan-*

*tum meruit,* without attempting to foreclose his lien. Indeed, "[i]t is only if the client recovers on his cause of action that there will be a tangible asset ... from which the attorney fee can be collected by foreclosing the lien." *Id.* at 869. Thus, Count I of Moore's petition, which sought judgment for his attorney fees, did not implicate any alleged attorney's lien. It merely prayed for judgment in the amount of the fees, plus interest and court costs.

█ Missouri courts generally hold that expenses and fees "incurred by a beneficiary of an estate, rather than the personal representative, must be shown to be beneficial to the estate as a whole rather than to just individuals interested therein." *In re Estate of Murray,* 682 S.W.2d 857, 858 (Mo.App. 1984). In *Murray,* a beneficiary of the estate retained counsel and brought a successful action to remove the personal representative and compel an accounting. The beneficiary then sought reimbursement of her attorney's fees and expenses from the estate. In affirming the trial court's award of fees and expenses, this court stated:

> As a general principle, the allowance of attorney fees under the criteria of "equitable balancing of benefits" is governed by the rule ... that "very unusual circumstances" must be shown.... As to this specific situation, where a beneficiary of an estate is seeking an allowance for attorney fees from the estate upon an action for an accounting from and removal of a personal representative, there should exist the requirement that not only must the action have been successful, but that the result is beneficial to the estate.

*Id.* at 858–59. The foregoing language was quoted with approval by the Eastern District of this court, in a case involving similar facts, in *In re Estate of Chrisman,* 723 S.W.2d 484, 487 (Mo.App.1986).

In the instant appeal, Janice C. Campbell's action for discovery of assets was extremely beneficial to the estate as a whole, recovering in excess of $200,000 for the estate. The attorney's fees incurred in that action, therefore, meet the *Murray* test for allowance of such fees.

We then turn to Count I of Moore's petition to determine if it stated a cause of action for recovery of his fees.

To recover on [the] theory [of quantum meruit], plaintiff must plead and prove that it provided to defendant materials or services at the request or with the acquiescence of defendant, that those materials or services had a certain reasonable value, and that defendant despite demands of plaintiff, has failed and refused to pay the reasonable value of those materials and labor.

*First Place, Inc. v. Douglas Toyota III, Inc.,* 801 S.W.2d 721, 723 (Mo.App.1990) (*quoting Berra v. Papin Builders, Inc.,* 706 S.W.2d 70, 73 (Mo.App.1986)). Giving the allegations of Count I their fair and reasonable intendment, Moore stated a cause of action in *quantum meruit.* The probate division therefore erred in dismissing it as seeking to impose an attorney's lien on the undistributed assets of the Campbell estate.

█ Count II of the petition, on the other hand, alleges an attorney's lien and, although unartfully drawn, the gist of the prayer is to impose the lien on the proceeds of the discovery of assets judgment. As to this Count, the court below correctly found that "an attorney's lien does not properly lie against the undistributed assets of an estate." *Carter v. Stendeback,* 482 S.W.2d at 537. While *Carter* dealt with an alleged attorney's lien based on a judgment rendered against a beneficiary, the same rationale applies to a case such as this where the attorney's fees were incurred prosecuting an action that ultimately resulted in a favorable judgment for the estate. This is so because the probate code establishes the priorities in which estate claimants are paid.

Section 473.397 classifies claims and statutory allowances, and § 473.430 provides that claims and statutory allowances shall be paid in the order specified in § 473.397. The code provides, in effect, for a marshaling of assets, and then directs the use of those assets for payment of claimants in the order of priority. Thus, it would be inconsistent with the scheme of the probate code to permit imposition of an attorney's lien on estate assets. Moreover, attorneys performing services for

a probate estate are afforded protection because such fees are an expense of administration. *In re Sternberg's Estate,* 204 S.W.2d 761, 764 (Mo.1947). Expenses of administration are class 2 claims, second only in order of payment to court costs, which are class 1. § 473.397.

■■■ As noted previously, the attorney lien statute is designed to afford the attorney protection for services rendered by creating a lien in his favor. In the context of probate administration, however, the attorney is already granted protection for fees incurred on behalf of the estate. Therefore, since as matter of law, an attorney's lien cannot be imposed on the assets of the estate, the probate division did not err in dismissing Count II of his petition.

■■■ As to Count III of Moore's petition, he designates it a "creditor's bill." While, as noted, the pleading is rather unartfully drawn, it appears he is alleging that Overman proposes inequitable offsets for distributive shares of the estate which would largely preclude actual collection of the discovery of assets judgment and that by virtue thereof, there may be insufficient assets in the estate to pay his fees; that the estate assets are not subject to levy; and that he has no adequate remedy at law.

> Missouri recognizes the creditor's bill as a viable remedy. It is an equitable remedy available to a creditor who seeks to enforce the payment of debts out of assets that cannot be reached by traditional means of execution on a judgment established in a suit at law. The creditor's bill may be brought by an unsecured creditor to set aside a transfer by the debtor on the ground of fraud or to discover the debtor's hidden assets, subjecting that property to the payment of the debt.

*Shockley v. Harry Sander Realty Co.,* 771 S.W.2d 922, 924 (Mo.App.1989) (citations omitted).

Applying the foregoing to Count III of Moore's petition, and giving his allegations their fair and reasonable intendment, we cannot say that Count III states a claim upon which relief in the nature of a creditor's bill can be granted. Count III alleges that Over-

man is seeking permission from the probate division of the circuit court for her actions. The probate division is certainly aware of its own judgment and Moore's claim to payment of his fees from the estate. The allegations do not cry "out for equitable relief." *Id.* We therefore conclude that the trial court did not err in dismissing Count III of the petition.

We must briefly address Overman's contention that the dismissal of all three counts of the petition was justified by the doctrine of abatement. This was the ground for dismissal specified in her motion to dismiss, and she argues it in this appeal:

> The principle of abatement bears the enlightening appellation of "pending action doctrine." It comes into being in the situation in which a subsequent suit is instigated by the plaintiff in a previous suit. Treatment of the second action is generally as follows: "[W]here two actions involving the same subject matter between the same parties are brought in courts of concurrent jurisdiction, the court in which service of process is first obtained acquires exclusive jurisdiction and may dispose of the entire controversy without interference from the other." *State ex rel. General Dynamics v. Luten,* 566 S.W.2d 452, 458 (Mo. banc 1978). Abatement is also properly applied to a later action between the same parties for the same cause of action brought in the same court or a court of another jurisdiction. *See State ex rel. Industrial Properties, Inc. v. Weinstein,* 306 S.W.2d 634, 637–38 (Mo.App.1957).

Overman contends that Janice C. Campbell's claim for allowance of Moore's attorney's fees, filed in the probate division prior to Moore's petition in circuit court, seeks the same relief as the petition, and since the claim was filed first, Overman reasons that the second action must be dismissed.

■■■ We disagree. First, the parties to the claim, and the parties to the petition are not the same. Janice C. Campbell filed the claim in the probate division seeking allowance of the fees Moore charged in representing her in the discovery of assets proceeding. Moore is not a party to that action. He has no control over how or when the claim will be prosecuted. On the other hand, in the circuit

court action he filed, Moore is the plaintiff. Janice C. Campbell is not a party. Overman is the only mutual party in both the claim and the petition. Thus, the pending action doctrine is inapplicable. However, we would point out that the claim and Moore's action may be consolidated for trial pursuant to Rule 66.01(b), and, of course, a double recovery is prohibited as "a species of unjust enrichment and is governed by the same principles of preventive justice." *Kincaid Enters., Inc. v. Porter,* 812 S.W.2d 892, 900 (Mo.App.1991).

Because of our disposition of the case, we need not address Moore's other points, alleging violation of his due process rights. The trial court's dismissal of Counts II and III of Moore's petition is affirmed. The trial court's dismissal of Count I of Moore's petition is reversed, and the case is remanded for further proceedings.

All concur.